QUIRK, RESPONDENT, *v.* MULLER, APPELLANT.

[Submitted June 4, 1894.   Decided June 11, 1894.]

CONTRACTS—*Validity—Public policy—Procurement of testimony.*—A contract by which plaintiff, in effect, agreed to procure testimony that would win a lawsuit for defendant, for which services he was to receive a commission upon the amount recovered, is void as against public policy and as tending to impede the administration of justice.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION upon contract.   Judgment was rendered for plaintiff below by HUNT, J.   Reversed.

Statement of the case by the justice delivering the opinion:

This is an appeal from the judgment, upon which the only contention made is that the complaint does not support the judgment.   (*Gillette* v. *Hibbard,* 3 Mont. 412.)

The action was for compensation for certain personal services rendered by plaintiff to defendant, under an alleged contract. The complaint is somewhat voluminous; but the portions material to this inquiry may be stated therefrom as follows: One Buyck was in possession of certain property of defendant herein, Anna Muller, under a deed from said Muller to Buyck, which she claimed was fraudulent.   She desired to recover possession of this property.   It may be stated in passing that the action which she brought for that purpose was finally decided in this court under the title of *Muller* v. *Buyck,* and reported in 12 Mont. 354.

The complaint in this case then alleges that she, Anna Muller, "made and entered into an agreement with this plaintiff, whereby she employed this plaintiff to make search and inquiry, and ascertain the names of persons who were familiar with the said property, and acquainted with the defendant and the said Sully Buyck, and with the facts and circumstances connected with the execution of the instrument aforesaid, and of the financial circumstances of the said Sully Buyck, and to procure such other testimony which, when introduced in court in an action duly and regularly brought, would entitle the said defendant to the possession of the said property, and the cancellation of the said instruments, and restore her to all her

rights in and to said property; and the said defendant then and there promised and agreed that if this plaintiff would ascertain and procure the names of such witnesses, whose testimony would enable her to recover her rights in and to said property, and the possession thereof, that she, the said defendant, would pay to this plaintiff, for such services, an amount equal to ten per cent of the value of the property so recovered, to be paid when the said property would be recovered; and plaintiff agreed and entered upon said employment, and procured the names of witnesses to establish said facts, if such witnesses could be procured. That thereupon this plaintiff, relying upon said agreement, commenced an investigation of the facts and circumstances connected with the execution of the instruments aforesaid, and to obtain all information he could with reference to the said Sully Buyck, and to procure the names of persons who were familiar with the facts and circumstances relating to the ownership of the said property, and with the execution of the said instruments, and the financial condition of the said Sully Buyck, and the consideration that was paid for said property, and the source from which such consideration was derived, and all other facts necessary to establish the right and title of the said Anna Muller in and to the property aforesaid; and plaintiff avers that he did procure the names of witnesses who were familiar with the facts aforesaid, and did secure sufficient testimony to establish defendant's right, title, and interest and claim in and to said property, and each and every part thereof."

The complaint then goes on to set up the commencement of the action of *Muller* v. *Buyck,* and the trial thereof, and the judgment in favor of Muller. Speaking of the trial of that case, the complaint alleges: "And the said testimony procured by this plaintiff in his said employment was introduced, and the witnesses whose testimony he procured were produced and testified in said action in behalf of said Anna Muller; and, upon due consideration of said testimony, the court adjudged and decreed," etc.

The judgment being for the plaintiff in this action, the defendant appeals.

*J. M. Clements,* for Appellant.

The alleged contract sued on is champertous and void. It is a hiring of respondent to do an illegal act, i. e., to procure testimony, which, when introduced in court in an action duly and regularly brought, would enable appellant to recover rights in, and possession of, property, in consideration of her promise to pay him " an amount equal to ten per cent of the value of the property so recovered," when recovered. (Compiled Statutes, pp. 583, 647, §§ 201, 278; 2 Parsons on Contracts, 8th ed., 765; 2 Bishop's Criminal Law, § 121; *Sprye* v. *Porter,* 7 El. & B. 58–81; *Stanley* v. *Jones,* 7 Bing. \*369–\*76; *Stevens* v. *Bagwell,* 15 Ves. 139–56; *Hilton* v. *Woods,* L. R. 4 Eq. C. 432–39; *Boardman* v. *Thompson,* 25 Iowa, 495–507; *Barker* v. *Barker,* 14 Wis. \*131–\*41; *Allard* v. *Lamirande,* 29 Wis. 502; *Coquillard* v. *Bearss,* 21 Ind. 479; 83 Am. Dec. 362; *Lafferty* v. *Jelley,* 22 Ind. 471; *Holloway* v. *Lowe,* 7 Port. 488; *Meeks* v. *Dewberry,* 57 Ga. 263; *Martin* v. *Clarke,* 8 R. I. 389, 403; *Ackert* v. *Barker,* 131 Mass. 436; *Atchison, Topeka & Santa Fe R. R. Co.* v. *Johnson,* 29 Kan. 218–27; *Brown* v. *Beauchamp,* 5 T. B. Mon. 413; 17 Am. Dec. 81; *Kelly* v. *Kelly,* 86 Wis. 170; *Byrne* v. *R. R. Co.,* 55 Fed. Rep. 44; *Lucas* v. *Allen,* 80 Ky. 681.) As to attempted evasions of the law against champerty: *Martin* v. *Amos,* 13 Ired. 201; *Munday* v. *Whissenhunt,* 90 N. C. 458; *Backus* v. *Byron,* 4 Mich. 535; *Elliott* v. *McClelland,* 17 Ala. 206; *Dumas* v. *Smith,* 17 Ala. 305.

*Walsh & Newman,* for Respondent.

The contract is not champertous. The complaint shows that the defendant was the owner of certain property; that she, while intoxicated, and while confidential relations existed between her and Buyck, was induced by fraudulent representations made by him to sign an instrument which purported to convey all the property to him; and by virtue of that instrument he went into possession of that property, claimed to be the owner thereof, and excluded the defendant Muller therefrom. The defendant desiring to recover possession of the property, and to cancel said instrument, and being ignorant of

the names of the persons who had personal knowledge of the facts which would enable her to recover her property, employed plaintiff to make search and inquiry to ascertain the names of these persons, and to look up other testimony for her. This is a legitimate contract. Parties litigant, or contemplating litigation, often employ others to search for witnesses, to follow and trace them from city to city or from state to state, that their testimony may be procured, or to search records or to procure other competent testimony to be used at the trial of the cause. The persons doing such work are entitled to compensation, and that compensation may be measured by the amount of time employed, the value of the services to the employer, or in such other manner as the parties may agree. In this case the compensation agreed upon was an amount equal to ten per cent of the value of the property of which possession was to be recovered. The doctrine of champerty and maintenance has undergone such a change that "ancient law" cannot be considered authority. To make a contract champertous under the ancient law there should be a bargain to receive part of the property in litigation. But such contracts are not now held void. They have been upheld in California and many other states. (*Howard* v. *Throckmorton,* 48 Cal. 482; *Ballard* v. *Carr,* 48 Cal. 74; *Hoffman* v. *Vallejo,* 45 Cal. 564; *Mathewson* v. *Fitch,* 22 Cal. 86; *Ramsey* v. *Trent,* 10 B. Mon. 341.) Where the contract specifies that the party shall receive as compensation an amount equal to a certain percentage of the value of the property recovered, as in this case, the contract will be upheld. (*McPherson* v. *Cox,* 96 U. S. 404; *Stanton* v. *Embrey,* 93 U. S. 548; *Wright* v. *Tibbitts,* 91 U. S. 252; *Taylor* v. *Bemis,* 110 U. S. 42; *Jeffries* v. *Mutual L. Ins. Co.,* 110 U. S. 305.) In 3 Am. & Eng. Ency. of Law, 78, an exhaustive list of authorities is cited in support of this proposition.

DE WITT, J.—We are of opinion that the complaint is not sufficient to sustain the judgment. The learned district judge would have doubtless so held if the point had been made before him. We believe that the contract set out in the complaint is void as against public policy, and as tending to impede the

administration of justice. The plaintiff was employed, not only to make search and inquiry for witnesses, and to ascertain the names of persons acquainted with the facts and circumstances, but also, in addition to this, to procure such other testimony which, when introduced in evidence, would entitle the said Anna Muller to recover possession of the property. The searching for witnesses who had disappeared or documents which had been lost, or the performance of legitimate detective work, is not subject to objection. But the plaintiff was, according to his contract, to do more than this. These things he was to do, but they were not considered sufficient. He added to them, and contracted, in connection with them, that he would, in effect, procure testimony that would win a lawsuit. It is alleged further, in effect, that the testimony which he thus procured did win the lawsuit. Indeed, the contract, brought down to a simple statement, is that plaintiff agreed, for a consideration, to procure testimony that would win the lawsuit. He procured the testimony, and it won the suit.

We do not hold the contract void because it was an agreement to procure perjury, or because it did procure perjury, but the contract had the tendency and opened the very strong temptation to the procurement of perjury.

Mr. Bishop says: "The mere tendency of a contract to promote unlawful acts renders it illegal, as against the policy of the law, without regard to any circumstances indicating the probable commission of such acts." (Bishop on Contracts, § 476.)

In the case of *Wellington* v. *Kelly*, 84 N. Y. 543, the court found that the particular contract there under review was a legitimate and proper one, but, upon the general principle of contracts to furnish evidence for a lawsuit, Judge Andrews, in the opinion, says: "In *Stanley* v. *Jones*, 7 Bing. 369, it was held that an agreement made by a third person to communicate to a person claiming to have been defrauded, such information as would enable him to recover damages for the fraud, and to exert his influence to procure evidence to substantiate the claim, upon condition of receiving portion of the sum recovered, was illegal. In that case the person making the agreement to communicate the information was an entire

stranger in interest to the proposed litigation, and professed to have knowledge of facts of importance to the party, but which he did not disclose. Lord Denman said that such an agreement was illegal, from its manifest tendency to prevert justice, and we fully assent to the decision in that case. An agreement by a stranger to furnish evidence to substantiate a claim or defense, for a compensation depending upon the success of his efforts, is dangerous in its tendency, as furnishing an inducement for perjury and the subornation of witnesses." In the English case cited in the New York Report, the person contracting to furnish the evidence agreed that "he should and would use and exert his utmost influence and means for procuring such evidence as should be requisite to substantiate the claims of the said defendant." (*Stanley* v. *Jones*, 7 Bing. 379.) There is a very considerable similarity between the contract which was condemned by the English court and that which is now before us.

The supreme court of Illinois took occasion, in the case of *Gillett* v. *Board*, 67 Ill. 256, to treat this subject in very vigorous and pertinent language. A case was about to be tried involving the legality of an election to determine whether the county should subscribe for certain railroad bonds. The legality of the election which had been held being questioned, and the county supervisors, apparently desiring to overthrow the result of the election, made certain contracts as to the procuring of testimony to attack the result of that election. In the contract which the supervisors made with one McNeal, they provided as follows: "That if he [McNeal] will hunt up testimony, and prepare the same, and present it to the proper authorities who may be authorized to receive it, and, after said testimony or evidence is fully received and shall be acknowledged as legal, then, for said services, said McNeal is to receive from Logan county the following amounts: For ten illegal votes, so proved, $100; for ten other illegal votes, so proved, $200; for ten other illegal votes, so proved, $300; for ten other illegal votes, so proved, $400; for ten other illegal votes, so proved, $400; for ten other illegal votes, so proved, $400; for ten other illegal votes, so proved, $400. The above-mentioned illegal votes must be in place of, answer to, or rep-

resent certain unknown names on the East and West Lincoln poll-books of the election above mentioned. The condition of this obligation is such that the said McNeal is to pay all his own individual expenses and the expenses of any parties whom he may employ in preparing such testimony, and finding such testimony, and finding such witnesses; and that above amount, or any part of the same, shall not be due or payable until the illegality of such votes is legally proven. It is further agreed that, in case the county of Logan is finally released from any liability to pay said bonds now in dispute between said county and the P. L. and D. R. R. Company, by means of proving the majority in said election to be illegal, the county of Logan further agrees to pay said M. B. McNeal the sum of twelve hundred dollars, which said amount is to be in addition to the scale of prices above mentioned, and payable only after the courts have decided the case in favor of the said county."

The supreme court of Illinois in passing upon this contract, said: "The evidence disproved the actual use by the committee of any corrupt means or any corrupt design, on their part, in the use of the money. But the contracts themselves are pernicious in their nature. They created a powerful pecuniary inducement on the part of the agents so employed that the testimony should be given of certain facts, and that a particular result of the suit should be had. A strong temptation was held out to them to make use of improper means to procure the needful testimony, and to secure the desired result of the suit. The nature of the agreement was such as to encourage attempts to suborn witnesses, to tamper with jurors and to make use of other 'base appliances' in order to secure the necessary results which were to bring to these agents their stipulated compensation. The tendency of such arrangement must be to taint with corruption the atmosphere of courts, and to pervert the course of justice. A pure administration of justice is of vital public concern. It tends to evil consequences that any such venal agency as is constituted by these contracts should have a part in the conduct of judicial proceedings where the attainment of right and justice is the end. Should such contracts of this character receive countenance we might, among the multiplying forms of agency of the time, have to

witness the scandalous spectacle of a class of agents holding themselves out to the public as professional procurers of desired testimony for litigants in court for pay, contingent upon success in their suits. In *Marshall* v. *Railroad Co.*, 16 How. 314, it was held that a contract or a contingent compensation for obtaining legislation was void by the policy of the law. With much greater reason, we think, should the contracts under consideration be held vicious. We cannot sanction them. On account of their corrupting tendency we must hold them to be void, as inconsistent with public policy." (*Gillett* v. *Board*, 67 Ill. 256. See, also, *Patterson* v. *Donner*, 48 Cal. 369.)

We fully concur in the views expressed in these cases, and we are of opinion that the contract under consideration falls within the objectionable class. To be sure, under the contract the plaintiff Quirk may have performed only innocent acts, and there is nothing to indicate that both his intentions in making the contract and his acts in carrying it out were other than wholly innocent and lawful. But the contract was just such an one as to encourage an unlawful act. It invited subornation of perjury. It held out a large reward for success. The amount claimed by plaintiff was some $1,800. The obtaining of this large sum depended upon plaintiff procuring testimony which would win the lawsuit. The law does not tolerate the offering to any one, no matter how virtuous, of such temptations to crime. The evils and vices of such a contract are strongly stated in the language of the Illinois court, quoted above. It would, indeed, be a sad spectacle to see springing up in this state the business of procuring testimony sufficient to win lawsuits. We regretfully express the fear that perhaps such a business might find a patronage. But from such a result we will secure ourselves by declaring void a contract the manifest tendency of which is to present the direct temptation and the great inducement to one to procure subornation of perjury. There is here too close an approach to the evil maxim, sometimes quoted: "Get money; honestly, if you can; but get money." The contractor in plaintiff's position could only too easily be led to say to his conscience: "I will procure the necessary testimony; honestly, if I can; but I

will procure the testimony." The evils of such contracts are illustrated in the very case for which this plaintiff contracted to procure the testimony which would succeed in winning a judgment for plaintiff therein. That case was before us on appeal, and was reported in 12 Montana, 354. In our investigation it appeared that practically the only witness for the plaintiff was herself. It seems that the case rested solely upon the testimony of plaintiff Muller and the defendant Buyck. So, if it be true that plaintiff herein, Quirk, procured the testimony which won the judgment in *Muller* v. *Buyck*, he procured the plaintiff herself to testify, and the only construction of the situation by which it could be claimed that he procured any testimony would be that he procured or instructed her to testify as she did, because it was her testimony that won the case. It does not appear, on an inspection of the decision in that case, that plaintiff herein did or could have rendered service of such nature, or any other. We speak of this as an illustration of the evil tendency of such a contract as is pleaded in the complaint in this case.

We think that nothing here said can be interpreted as forbidding the offering of rewards for the detection of crime, or the employing of persons to search for material witnesses or important papers or documents or exhibits which have been lost. We think that no difficulty will arise in sustaining contracts for the performance of legitimate services, while the stamp of disapproval is put upon contracts clearly *contra bonos mores.*

The judgment is reversed, and the case is remanded, with directions to dismiss the complaint.

*Reversed.*

PEMBERTON, C. J., and HARWOOD, J., concur.