[No. 4911.   Decided June 30, 1904.]

PAUL SMITS, *Appellant,* v. JOHN C. HOGAN, *Respondent.*[1]

CHAMPERTY—ATTORNEY AND CLIENT—AGREEMENT TO PAY COSTS
AND PROSECUTE FOR CONTINGENT FEE.   It is doubtful if the doc-
trine of champerty was ever in force in this state, and if it
was, it was repealed by Bal. Code, § 5165, declaring that the
compensation of attorneys shall be left to the parties, and hence
an agreement whereby the attorney agrees to pay the costs and
to prosecute a case for a percentage of the recovery is legal.

SAME—DAMAGES TO DEFENDANT BY REASON OF CHAMPERTOUS
AGREEMENT — MALICE — MALICIOUS PROSECUTION.   In an action
brought against an attorney for damages for maliciously incit-
ing an insolvent person to prosecute an unfounded action against
the plaintiff, and which was prosecuted under a champertous
agreement, it is proper to instruct that the plaintiff must show
malice and want of probable cause, as in an action for malicious
prosecution, and the action is not maintainable as a claim for
damages for champerty irrespective of malice, since the doc-
trine of champerty does not prevail in this state.

Appeal from a judgment of the superior court for Che-
halis county, Irwin, J., entered July 21, 1903, upon the
verdict of a jury rendered in favor of the defendant.   Af-
firmed.

*J. C. Cross* and *C. B. Rawson,* for appellant.

*W. H. Abel* and *John C. Hogan,* for respondent.

HADLEY, J.—Appellant brought this suit against re-
spondent to recover alleged damages.   The complaint, in
substance, avers, that respondent is an attorney at law;
that he maliciously, and without reasonable or proper
cause, stirred up one Erickson, the latter being insolvent
and in indigent circumstances, to prosecute an action
against appellant for alleged malpractice as a physician

[1]Reported in 77 Pac. 390.

and surgeon; that the following written agreement was
executed between said Erickson and respondent, to wit:

"It is hereby agreed by and between John C. Hogan and
John Erickson as follows: That the said Hogan is to
act as attorney for said Erickson in the matter of bring-
ing suit against Paul Smits, to recover for negligent and
unskillful setting of fractured finger, and to prosecute
said case to final judgment in the superior court of Che-
halis county, and pay the necessary court disbursements
in prosecuting said case.

"And for said services the said Erickson agrees to give
him one-third of the amount recovered in said action as
full compensation. And neither of the parties hereto
shall settle said case without the consent of the other."

It is alleged, that the suit for malpractice was prose-
cuted by respondent, as attorney for said Erickson, in
pursuance of the above agreement; that the same resulted
in a judgment against Erickson for costs, and that he
should take nothing by his action. Appellant avers dam-
ages to himself, for necessary attorney's fees and expenses
incurred in the former suit, and demands recovery from
respondent. Issue was joined upon the complaint. A
trial was had before the court, and a verdict was returned
for respondent. Appellant moved for a new trial, which
was denied. Judgment was entered in accordance with
the verdict, and this appeal was taken.

The alleged errors assigned as stated in the brief are,
(1) "in the giving of certain instructions," and (2) "in
refusing to give certain instructions." The second ground
of error, as stated above, is waived in the brief, the first
only being discussed. The general and indefinite assign-
ment as to the instructions given is of no practical assist-
ance to the court, and we are compelled to resort to the
general discussion in the brief to discover what objections
are intended to be urged. From the general discussion,

we understand that the instructions are criticised on the theory that it was error for the court to instruct that appellant must show that respondent maliciously stirred up or incited the bringing of the former suit. We think this was not error, for the reason that the complaint alleges, with much emphasis, that respondent did act maliciously, and it seems to have been drawn upon the theory that the action is one for malicious prosecution.

We understand from appellant's argument, however, that he contends now that, by reason of the written agreement above set forth, the action is based upon a claim of damages for champerty or maintenance. It is insisted that the agreement was champertous, and that appellant is entitled to recover, even though malice in fact is not shown. It is doubtful if the doctrine of champerty was ever in force in this state, as a part of the common law, under the authority of decision by American courts.

"Nor is the contract void as being contrary to the policy of any law of this state in regard to maintenance. That offense was created by statute in England in early times, in order to prevent great and powerful persons from enlisting in behalf of one party in a lawsuit, by which the opposite and feeble party would be oppressed and prevented from obtaining justice. It has been said by English judges that under the enlightened and impartial administration of justice in later times the object of the law had ceased and the law itself had become nearly obsolete. It has been said in America that the law against maintenance was peculiar to early English society, and inapplicable to American society, and, therefore, that it would not exist here unless by statute enacted here. At an early day in the history of the State of New York a statute was enacted against maintenance. At the revision of the laws of that State in 1830, the revisors, in a report to the Legislature, say: 'It is proposed to abolish the law of maintenance and to qualify that of champerty, by permitting mortgages of lands in dispute to

raise money, under guards and restrictions which will prevent abuse,' and the mode adopted to 'abolish the law of maintenance' was simply to omit enacting any statute upon the subject and repealing the old statute by which it was created or adopted. There was no special repeal of this old statute, but it was included in the general repealing act, nor was there any law directly abolishing the offense of maintenance. Under these circumstances Judge Paige, in the case of *Hoyt v. Thompson*, 1 Selden, 347, said: 'Since the adoption of the revised statutes, maintenance has not, under our laws, been recognized as an offense, and champerty only remains an offense in a qualified form.' Chancellor Walworth, in the case of *Mott v. Small*, 22 Wend. 405, said: 'I am prepared to say that all the absurd doctrines of maintenance that grew out of the statutes which might have been necessary in a semi-barbarous age were swept away by the recent revision of the laws, and many of them had been virtually abrogated long before that time.' Chancellor Sanford, in the case of *Thalheimer v. Brinkerhoff,* 3 Cowen, 647 [15 Am. Dec. 308], said: 'In many States of this Union these laws are not in force, and the want of them is said to be no inconvenience.' These remarks show that, in the opinion of these judges, in the absence of a statute creating it, the offense of maintenance does not exist in America as a part of the common law." *Mathewson v. Fitch,* 22 Cal. 86, 94, 95.

In *Courtright v. Burnes,* 13 Fed. 317, 320, the court observed:

"The tendency in the courts of this country is stronger in the direction of relaxing the common-law doctrine concerning champerty and maintenance, so as to permit greater liberty of contracting between attorney and client than was formerly allowed, and this for the reason that the peculiar condition of society which gave rise to the doctrine has in a great measure passed away. In some of the states the common-law rule is altogether repudiated, and it is held that no such contract is now invalid unless it contravenes some existing statute of the state."

See, also *Sedgwick v. Stanton,* 14 N. Y. 289; *Richardson v. Rowland,* 40 Conn. 565; *Lytle v. State,* 17 Ark. 608.

If, however, the doctrine of champerty ever was in force in this state, then, as far as it relates to the mode of compensation between attorney and client, it must have been repealed by our statute as found in § 5165, Bal. Code, which is as follows:

"The measure and mode of compensation of attorneys and counselors shall be left to the agreement, express or implied, of the parties. . ."

There is nothing in the above statute which prevents the making of the contract set out above, but the parties were left to make such contract as to the compensation of the attorney, if they saw fit to do so. In Utah it has been held that a statute of practically the same words as our own, quoted above, has modified the common law rule as to champertous contracts, so as to leave client and attorney free to contract as they choose with reference to the attorney's compensation. *Croco v. Oregon etc. R. Co.,* 18 Utah 311, 54 Pac. 985, 44 L. R. A. 285. The same has been held in Michigan. *Wildey v. Crane,* 63 Mich. 720, 30 N. W. 327.

Under either view of the case at bar, therefore, the contract mentioned was not an illegal one, for, if the rule as to champerty ever prevailed here, it has been modified by our statute. If it should be said that the statute of 1903, page 68, Session Laws of that year, upon the subject of barratry, bears upon the subject matter of this contract, it is sufficient to say that said statute was not in force when the contract was made. The contract not being illegal in itself, it was proper for the court, under the issues, to instruct the jury that appellant should show malice and want of reasonable or probable cause before he could recover, for

the reason that, with the illegality of the contract eliminated, the only remaining issue was that of malicious prosecution.

Respondent insists that, even if this contract came within the rule as to champerty, still appellant could not recover
of respondent, and counsel assert in respondent's brief that
they have been unable to find, in the whole range of
American cases, a single case where an attorney has been
held to respond in damages to the opposite party because
of having made a champertous agreement with his client.
It is true appellant has not cited such cases, but that question we do not now decide, for the reason, as we have seen,
that no champertous contract is involved.

The judgment is affirmed.

FULLERTON, C. J., and ANDERS, MOUNT, and DUNBAR,
JJ., concur.