## HALEY, RESPONDENT, *v.* HOLLENBACK, APPELLANT.

### (No. 3,759.)

(Submitted April 18, 1917. Decided May 15, 1917.)

[156 Pac. 459.]

*Contracts—Public   Policy—Procuring   Testimony—Champerty and Maintenance.*

Contracts—Procuring Testimony—Public Policy—Champerty and Maintenance.

    1.   A contract under which plaintiff agreed to search for legitimate evidence and find witnesses in possession of facts relevant and material to the issues in defendant's personal injury action, compensation to be contingent upon a successful outcome of the litigation, *held* not to contravene public policy.

    [As to when a contract is void because for services forbidden by public policy, see note in 66 **Am. Dec.** 505.]

Same—Validity.

    2.   Parties are free to contract as they please, so long as the contemplated engagement is not prohibited as illegal or contravenes public policy; and the fact that the obligee may under it do things to the public injury does not itself invalidate it.

Same—Interpretation—Rule.

    3.   In construing contracts, courts must give them such an interpretation as will make them lawful, if this can be done without violating the intention of the parties.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Andrew J. Haley against Matilda Hollenback. Judgment for plaintiff and defendant appeals from it and from an order denying her a new trial.

*Mr. O. W. McConnell* and *Messrs. Galen & Mettler,* for Appellant, submitted a brief; *Mr. E. G. Toomey,* of Counsel, argued the cause orally.

This is not a contract between attorney and client, but a contract between a third person, not an attorney at law, who agrees to go out and get witnesses and hunt up testimony in order to get a portion of the recovery, if any recovery is had. Such a contract is champertous, and therefore void. (*Patterson* v. *Donner,* 48 Cal. 369; *Quirk* v. *Muller,* 14 Mont. 467, 43 Am. St. Rep. 647, 25 L. R. A. 87, 36 Pac. 1077; *Goodrich* v. *Tenney,* 144 Ill. 422, 36 Am. St. Rep. 459, 19 L. R. A. 371, 33 N. E. 44; *Lucas* v. *Allen,* 80 Ky. 681; *Lyon* v. *Hussey,* 82 Hun, 15, 31 N. Y. Supp. 281; *Neece* v. *Joseph,* 30 L. R. A. (n. s.) 278, note; *Hughes* v. *Mullins,* 36 Mont. 267, 271, 13 Ann. Cas. 209, 92 Pac. 758; 6 Cyc. 864; 9 Cyc. 500.) "An agreement provided that if a party would furnish evidence by means of which a judgment could be obtained against a third party, he should have an interest in the judgment. Held, that such a contract partaking of maintenance was void as against public policy." (*Getchell* v. *Welday,* 4 Ohio Dec. 65.)

*Messrs. E. A. & Frank E. Carleton,* for Respondent, submitted a brief; the latter arguing the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

In this action plaintiff recovered a verdict for $500 and costs. Defendant has appealed from the judgment entered thereon and from an order denying her a new trial. The ground of recovery alleged is a breach of contract.

On April 29, 1910, defendant's son, John Hollenback, was electrocuted by coming in contact with a wire heavily charged

with electricity. Hollenback was then in the employ of the Stone & Webster Engineering Corporation, which was engaged in the construction of a dam in the Missouri River, in Lewis and Clark county. Defendant thereafter brought an action against the corporation to recover damages for the death of her son, alleging that it was caused by the culpable negligence of the corporation. This was determined in her favor, the jury awarding her a verdict for $18,000. After reciting the foregoing facts, the complaint herein alleges:

"III. Plaintiff avers that during the prosecution of said action of *Matilda Hollenback* v. *Stone & Webster Engineering Corporation* it became and was necessary in order to properly prepare said cause for trial that this defendant, plaintiff in the aforesaid cause of *Hollenback* v. *Stone & Webster Engineering Corporation,* should employ someone to hunt up the legitimate and proper evidence which would show how the accident occurred, also to show the negligence of the defendant, if such evidence in fact actually existed, as this plaintiff alleges that it did.

"IV. Plaintiff avers that in view of all the foregoing, and on or about the month of ——, 1910, he made and entered into a contract with this defendant under and by virtue of which he was to search for *bona fide* witnesses and to hunt up such *bona fide,* competent, and legitimate testimony as he might be able to obtain to be produced upon the trial of the defendant's said case, and to properly advise and to assist in all reasonable and proper ways this defendant generally in the prosecution of said cause, and that, in consideration of the same, defendant promised and agreed with plaintiff that, if she should recover in her said suit, she would pay plaintiff well for such services.

"V. That in pursuance of the aforesaid agreement plaintiff entered upon the due performance of his said contract with this defendant and devoted a large amount of time in finding and endeavoring to find witnesses who were conversant with the aforesaid facts and who would testify as to the true facts regarding the same upon the trial of said cause; that plaintiff

spent considerable sums of money in traveling around and going from place to place in search of evidence. That at one time plaintiff in the due performance of his said duties under said contract made a trip to the city of Butte, in the state of Montana, incurring considerable expense on account of the same. * * * ''

It is then alleged that the plaintiff fully performed the contract on his part; that upon recovery of the judgment in her action defendant became indebted to him for the reasonable value of his services; that she had failed and refused to recognize the contract or to pay plaintiff any sum whatever; and that there is due plaintiff the sum of $1,500, with interest and costs. Defendant's general demurrer having been overruled, she answered, joining issue upon all the material allegations of the complaint.

Counsel for defendant assail the integrity of the judgment on [1] the grounds that the contract is void because it contravenes public policy, and that the court erred in admitting and excluding evidence. The validity of the contract was questioned by the demurrer, and, during the trial, by motion for nonsuit and for directed verdict. The contention is that, while a suitor may lawfully employ a layman to search for and find witnesses who know the facts relevant and material to the issue which is or will be brought in controversy, for compensation to be paid without regard to the result, if the obligation to pay compensation becomes binding only upon the event of the suitor's success, the contract is illegal and void, in that it has a tendency and opens a strong temptation to procure perjury. They insist that the agent so employed, realizing that he will receive nothing unless the suitor is successful, will naturally produce or secure witnesses whose testimony will win the suitor's case. Hence the contract alleged comes within the class of those denounced by this court in *Quirk* v. *Muller*, 14 Mont. 467, 43 Am. St. Rep. 647, 25 L. R. A. 87, 36 Pac. 1077, and *Hughes* v. *Mullins*, 36 Mont. 267, 13 Ann. Cas. 209, 92 Pac. 758.

In the first of these cases the plaintiff had obligated himself to furnish such evidence as would win the suit. In the second the plaintiff had undertaken to furnish evidence which would produce results favorable to the suitor in one or both of two pending suits, *viz.*: (1) Win one or both of them upon trial; or (2) put the plaintiff in such a position that he could force a favorable settlement of one or both of them. All the courts, so far as their decisions have been called to our attention, or we have examined them, hold such contracts void. Mr. Justice De Witt, in *Quirk* v. *Muller, supra,* quoted with approval the rule as stated by Mr. Bishop, as follows: "The mere tendency of a contract to promote unlawful acts renders it illegal, as against the policy of the law, without regard to any circumstances indicating the probable commission of such acts." (Bishop on Contracts, sec. 476.)

In 6 Cyc., at page 864, it is said: "By the common law, and in most of the states which have adopted the common law or enacted statutes on the subject, an agreement by a third person other than an attorney to defray the expenses of a suit in which he has no interest, or to give substantial support in aid thereof in consideration of a share of the recovery, is champertous." On the same page it is further said: "An agreement to furnish such evidence as shall enable the party to recover a sum of money, or other thing, by action, and to exert influence for procuring evidence to substantiate the claim on condition of receiving a portion of the thing recovered, is champertous."

The contract under consideration in this case, however, does not fall within the class of those considered in *Quirk* v. *Muller* or *Hughes* v. *Mullins, supra,* nor within any of the cases cited in support of the text quoted from Cyc. Plaintiff did not agree to furnish evidence that would establish defendant's claim, nor was he to have any portion of the possible recovery. No authority has been called to our attention, nor have we been able to find any, which holds such a contract open to objection because it contravenes public policy. Under the common law in England, a contract by an attorney to conduct an action for

compensation contingent upon recovery is champertous and void. (*Hilton* v. *Woods,* L. R. 4 Eq. 432; *Earle* v. *Hopwood,* 7 Jur. N. S. 775.)    In some of the states this rule has been recognized and enforced.    (*Ware* v. *Russell,* 70 Ala. 174, 45 Am. Rep. 82; *Lafferty* v. *Jelley,* 22 Ind. 471; *Roberts* v. *Yancey,* 94 Ky. 243, 42 Am. St. Rep. 357, 21 S. W. 1047; *Martin* v. *Clarke,* 8 R. I. 389, 5 Am. Rep. 586.)    In some of these cases the contract of the attorney included also a stipulation that he would pay the costs of the litigation.    This element, however, does not seem to have been regarded as determinative of the invalidity of the contract.    Other authorities hold that such a stipulation is invalid. (*Croco* v. *Oregon Short Line Ry. Co.,* 18 Utah, 311, 44 L. R. A. 285, 54 Pac. 985.)    As the contract in this case does not include such a stipulation, the question whether it would be lawful in this state is not here considered or determined.

By the current of authority a contract for contingent compensation is held valid.    (*Smits* v. *Hogan,* 35 Wash. 290, 77 Pac. 390, and citations in note to this case in 1 Ann. Cas. 299.) In this state, except in so far as they are prohibited by statute, attorneys are free to enter into such contracts with their clients for compensation as they choose.    Section 6422 of the Revised Codes declares: "The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law.    *    *    *    "

Section 7153 declares: "The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties.    *    *    *    "    When we come to look for the restraints imposed by law, we find that, aside from those enumerated in sections 6397 and 6398, among which is not mentioned a contract contingent upon the success of the litigant, we do not find any.    The effect of the broad provisions found in sections 6422 and 7153 is that they abolish the common-law doctrine of champerty and maintenance in this state relating to contracts for compensation between attorney and client, except in so far as it is retained in modified form in the other sections cited.    The Code of the state of Washington contains

a provision identical with section 7153 (Ballinger's Code, sec. 5165). In *Smits* v. *Hogan, supra*, the court, after expressing a doubt that the doctrine of champerty ever was in force in Washington, said that, as far as this doctrine relates to the compensation between attorney and client, it must have been repealed by the statute. The same conclusion was reached by the Supreme Court of Utah as to the scope of a similar provision in the Code of that state. (*Croco* v. *Oregon Short Line Ry. Co., supra.*) If such a contract may be made between an attorney and his client, the inquiry arises: Why should it be held unlawful for the client to contract upon the same basis with a layman for such services as the latter may lawfully perform? An action usually cannot proceed without the aid of an attorney. It cannot proceed at all unless the witnesses are found who can testify in support of plaintiff's suit. It cannot be questioned that it is lawful for a litigant to employ another layman at a stipulated compensation, to be paid in any event, to do for him what he could do for himself, *viz.*: To find the witnesses and to ascertain what the character of their testimony will be. (*Quirk* v. *Muller, supra.*) The physical condition of the suitor may render this course necessary, as where he has been wholly disabled by a personal injury. Add to this that he is penniless and cannot pay for such needed services unless he succeeds in establishing his claim for damages, and the making of such a contract is necessarily the only means by which he can gain assistance. The attorney employed on a contingency in the same case may not have the time nor the disposition to find the witnesses and thus prepare the case for trial. Unless the suitor may employ a layman upon a contingency, he is effectually barred of his right. Does the contract in the latter case have any greater tendency to promote unlawful acts than it has in the other? The attorney may, and frequently does, include in his employment the service of finding witnesses. Does this fact render his contract illegal? We apprehend that no one would assert this. Though the attorney is an officer of the court, he is not for this reason immune from the temptations to which the average man is sub-

ject. Besides this, his position affords him greater opportunity to make use of "base appliances" than does that of the average layman. Again, take the case of the penniless suitor. If he employs a stranger to find the evidence and promises compensation in any event, he is within the law. Yet the stranger knows very well that he will not receive any compensation unless the suit is won. This contract in final analysis is in no respect different in its tendency than the one based upon a contingency. In our opinion, no cogent reason can be assigned why, if the one is valid, the other is not equally valid, or why, if the attorney's contract is unobjectionable, that of the layman is not also. The latter has no greater tendency to taint the administration of justice than has the former. The obligation assumed in either case is to perform a legitimate service. The fact that the obligee may abuse the contract and make it operate to the public injury [2] does not itself invalidate it. (Greenhood on Public Policy, p. 27.) Parties are entirely free to contract as they please, so long as the particular engagement is not prohibited by law and does not contemplate the doing of any illegal act. That an engagement may be made by its abuse to operate to the public injury is no reason that it should be declared void. The obliga-[3] tion is upon courts always, in interpreting contracts, to give them such an interpretation as will make them lawful, if this can be done without violating the intention of the parties. In any event a contract will be upheld unless it must receive such an interpretation as will compel the conclusion that it contravenes public policy or some express provision of law. (*Lawson* v. *Cobban,* 38 Mont. 138, 99 Pac. 128; *Dallas* v. *Douglas,* 45 Mont. 114, 122 Pac. 275; *Finley* v. *School Dist. No. 1,* 51 Mont. 411, 153 Pac. 1010.) The contention of counsel is overruled.

We have examined the other assignments, but find none of them of sufficient merit to deserve special notice.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.