GROSS v. CAMPBELL ET AL.

*Contracts—Accord and satisfaction—Letter and check tendered·* *—Oral evidence admissible that terms rejected and counter-* *proposition accepted—Contract not against public policy·* *and void, when—Employment to search for evidence to* *be used in litigation—Compensation contingent upon suc--* *cess of litigation—Contract to furnish particular evidence* *for particular result, void—Action not maintainable for·* *failure to sue third person, when.*

1. When a letter, accompanied by a check, is tendered by one· person to another as an accord and satisfaction, the· latter may show by oral evidence that the tendered terms. were not accepted and that an oral counterproposition was made and accepted.
2. A court may not declare a contract to be against public policy and void unless it clearly appears to be so.
3. The employment by one person of another to search for·

*bona fide* evidence to be used in litigation, compensation to be dependent upon the success of the litigation, is not against public policy.

4. A contract by which one person, for compensation, is to furnish evidence of a particular kind to accomplish a particular result in a lawsuit, is void.

5. An action at law cannot be maintained by one person against another, who has agreed to bring a suit against a third party, for the latter's failure to do so, when the only interest the former has in the suit and its subject-matter is compensation contingent upon the winning of the suit.

(Decided January 17, 1927.)

ERROR: Court of Appeals for Mahoning county.

*Messrs. Payer, Winch, Minshall & Karch,* for plaintiff in error.

*Messrs. Kennedy, Manchester, Conroy & Ford,* for defendants in error.

PARDEE, P. J. The parties stand in this court in the same position they did in the court below. In the lower court the plaintiff brought a suit at law against the Youngstown Sheet & Tube Company, a domestic corporation, Jas. A. Campbell, its president, Leroy Manchester, its general counsel, and Walter E. Meub, its secretary, for the recovery of $1,000,000 for an alleged breach of a contract entered into between said plaintiff and said company.

The defendants denied liability upon said contract and asked to have the same canceled.

Upon the day set for trial, a jury was impaneled and sworn, and at the conclusion of the opening statement of one of the attorneys for the plaintiff, the defendants' counsel demurred to the statement, for the alleged reason that facts were not set forth therein, nor in plaintiff's petition, sufficient to constitute a cause of action against the defendants.

This demurrer was fully argued to the trial judge, and after being duly considered was sustained, the case taken from the jury, and a judgment entered in favor of the defendants. A motion for a new trial was filed and overruled, and the case is here on error to determine whether the trial court committed an error in sustaining said demurrer and entering judgment for the defendants.

The case was submitted to the trial court upon the second amended petition of the plaintiff, the amended joint answer and cross-petition of the defendants, and the reply of the plaintiff.

It is well established in this state that, when plaintiff's evidence offered in chief does not show a cause of action, it is the duty of the trial court to direct the jury to return a verdict for the defendant upon his motion. In so doing, the trial court is not permitted to make a finding of fact or to weigh the evidence, and, in arriving at its conclusion, the court must give the evidence and the inferences to be drawn therefrom an interpretation most favorable to the plaintiff, as the defendant, by the motion, admits, for the purposes thereof, that all the facts which the evidence in any way tends to prove are conclusively established. This situation then presents the question whether, as a matter of law, the plaintiff has a cause of action against the defendant.

The courts, recognizing the foregoing principle, have established the rule that, if the plaintiff's attorney in his opening statement to the jury makes a full recitation of the facts upon which the plaintiff's claim is based, and these facts, being given a construction most favorable to the plaintiff, show

that if the evidence were submitted to the jury it would not establish in law a cause of action in favor of the plaintiff and against the defendant, it is the duty of the court, upon motion of the defendant, to direct a verdict in his favor, as it would serve no useful purpose to take up the time of the court in hearing the testimony, when, at its conclusion, the same result would necessarily follow. In arriving at its decision, the trial court should not act arbitrarily, nor take an undue advantage of the plaintiff, but full opportunity should be given to the plaintiff to amend his petition, or the attorney's opening statement, or both, so that he may supply the missing facts, if possible to do so. *Cornell* v. *Morrison,* 87 Ohio St., 215, 100 N. E., 817.

It is not claimed in this case that the court acted arbitrarily, or that the plaintiff was denied the opportunity of fully presenting his claims to the jury; the sole question being the alleged erroneous conclusion reached by the trial court.

The plaintiff is a private detective, holding himself out for hire to whomsoever may be in need of his services as such. Between the years 1917 and 1922 he was employed by a corporation in the city of Youngstown, and he claimed that during the time of said employment he became possessed of information to the effect that the defendant company had been defrauded of large amounts of valuable personal property, through a conspiracy which he claims existed between employes of the company, on the one hand, and a large corporation of said city, on the other, which company purchased large quantities of scrap material from said defendant company. After his employment ceased with the company for which he had been working,

he made further investigation of the alleged fraud and obtained further information relative thereto.

With all of this information in hand he sought and obtained an interview with the defendant Campbell, who was president of the defendant company, and placed the information which he had before him, and sought employment and compensation for further investigation of said fraud. As a result of this interview he was employed by said company, the defendant Campbell writing him, under date of August 11, 1922, the following letter:

"Referring to your letter of June 15th, directed to Mr. Meub, and confirming your conversation with me a few days since, you may proceed to investigate for us the matter of our having been defrauded in material at our plant, upon the understanding that you are to receive, as your full compensation, 50 per cent. of all amounts recovered and actually received by us as the direct result of your investigations and evidence secured thereby.

"No investigation shall be made of our records or of employes at our plant, except with the full understanding and approval, in advance, of our general superintendent, W. C. Reilly.

"We are to receive full information of all your investigations and findings, and all records, documents, and evidential matter, of every character, received by you, are to be returned to us. No proceedings, civil or criminal, shall be commenced except with the approval of our counsel, and all proceedings, if commenced shall be under the sole direction of our counsel.

"We will co-operate with you in every reasonable and proper way in furthering your investigation.

"This arrangement shall expire on December 1,

1922, but may be terminated at any time prior to such date by our giving you written notice to such effect.

"If so terminated by us without any compensation having been earned by you hereunder, as above provided, we will pay you, in lieu thereof, and as your full compensation hereunder, a reasonable amount for time and expense actually spent by you on this work."

Upon the receipt of this letter, the plaintiff went forward with his investigation of the alleged fraud until about December 1, when, by the terms of above letter, his employment ceased. On or about that date, not having completed his investigation, he was instructed by the defendants to proceed upon the original terms of his employment, except as hereinafter stated. In accordance with this new arrangement, he continued to make further investigation of said alleged frauds, reporting from time to time the result of his discoveries: confessions that he claimed to have procured and other evidence. This arrangement continued until about June 1, 1923, when he was summoned to the office of the defendant company and there met defendants Manchester and Meub. There, on the next day, plaintiff's employment was terminated, he was paid the sum of $10,000, and he was promised further compensation if recoveries were made; and on same day, June 2, 1923, he was written a letter, of which the following is a copy:

"Confirming our conversation of yesterday and this morning, I am handing you herewith check of the Youngstown Sheet & Tube Company in the sum of $10,000, in full payment and settlement for all your services rendered the company to date, and in full of all your claims of every character.

"It is understood, however, that if the Youngstown Sheet & Tube Company should secure a recovery, by settlement or otherwise, from the other company, or any of its stockholders, whose affairs you have been investigating, we will pay you such further compensation, taking into account the amount of the recovery, as may then seem just and proper.

"It is further understood that your employment is now terminated, and you are not to perform any further services for us unless we call upon you to do so, in writing."

Upon these facts and others hereinafter stated, the defendants claim that the conclusion reached by the trial court was right for the following reasons, to wit:

First, that the plaintiff and defendants entered into an accord and satisfaction, by which the plaintiff received $10,000, in full payment and settlement for all the services rendered by him, and in full of his claims of every character, as shown by the contract of settlement dated June 2, 1923.

Second, that the contract between the parties was void as being contrary to public policy.

Third, that it having been admitted in the opening statement that no recoveries were actually made, there was no breach of contract, as there was no legal obligation upon the part of the defendants to commence any proceedings, civil or criminal, to attempt to make recoveries.

We have been cited scores of cases by the attorneys on each side of this controversy, and we have found many others, and, after a careful consideration of the pleadings upon which this case was submitted, and the opening statement of counsel, which is conceded to be true, we find that the

controversy can be decided by the consideration of and application of fixed principles of law to the facts, and that it will serve no useful purpose to try to cite cases upon "all fours," or match cases, as is so often done. Neither will it be profitable to discuss "champerty and maintenance," their origin, and why their early strictness no longer prevails either in England or in this country. See *Reece* v. *Kyle,* 49 Ohio St., 475, 31 N. E., 747, 16 L. R. A., 723; *Brown* v. *Bigne,* 21 Or., 260, 28 P., 11, 14 L. R. A., 745, 28 Am. St. Rep., 752.

It will be observed from what has already been said that there was one continuous employment of said plaintiff by said defendant company, and that said employment may be divided into three parts: First, the original employment under the letter of August 11, 1922; second, the continuation of the employment under the supplemental oral arrangement made about December 1, 1922; and, third, the arrangement made June 2, 1923, in regard to said employment and the termination thereof.

Under the original employment, the plaintiff's services automatically terminated on December 1, 1922, and he was not to have any compensation unless recoveries were actually made and received by the defendant company as the direct result of plaintiff's investigations and evidence secured thereby.

The contract was not terminated by the defendants before December 1, 1922, and as no recoveries were made by the defendant company as a result of the plaintiff's efforts, up to this time there was not anything due the plaintiff under the contract, as by its terms:

The defendants "reserved unto themselves the

commencement and sole direction of all proceedings, civil and criminal, predicable upon the facts so ascertained.''

The original contract of employment now being at an end, the plaintiff claims that he was re-employed to proceed along the original lines of his investigation, upon the express promise, as alleged in his petition, ''that if he would go forward with his investigations and would obtain certain other and further information which they desired, they would bring and prosecute actions which he had requested them to bring for the collection of all amounts of which they had been defrauded as disclosed by plaintiff's investigation and reported to them,'' and that they would pay him a reasonable amount for time and expenses within a reasonable time, and further compensation as would be reasonable and just. This claim as to compensation was changed in the opening statement of plaintiff's counsel to ''50 per cent. of what we recover.''

The employment then continued on until the third stage was reached, when the plaintiff was tendered and accepted the sum of $10,000, but the terms upon which this was received will be discussed herein under accord and satisfaction.

Was there an accord and satisfaction between the plaintiff and defendants on June 2, 1923, when the plaintiff received from the defendants the letter hereinbefore referred to and the sum of $10,000?

Swan's Treatise (26th Ed.), p. 307, says that:

''An accord is an agreement to receive some act or thing in satisfaction of a claim or injury. Where such agreement is performed, it is a satisfaction of the claim or injury.

''An accord and satisfaction, in order to be valid and effectual as a defense against an action on the

claim or for the injury compromised, must be founded on a consideration; and the act to be done must be as certain as other agreements, and executed.''

The defendants claim that because they handed the plaintiff the letter and check, and he accepted the check, he is precluded from showing that he accepted the check upon other terms and conditions than those stated in the letter. With this contention of the defendants we do not agree.

The letter was a mere offer of the terms upon which the check was tendered, and the plaintiff was at liberty either to accept or reject the terms of the tender. The record shows that plaintiff refused to accept the check upon the terms tendered, returned the check and letter to the defendants, and made a counter oral proposition to the defendants, which was orally accepted by them. This proposition was the same as set forth in the letter, with the additional stipulation that the defendants agreed to proceed and make recoveries from those accused, as the result of plaintiff's investigation and the evidence secured thereby, and to pay him one-half of the amount recovered.

The letter not having been accepted by plaintiff, as claimed by the defendants, and there being, therefore, no contract based upon said letter, as also claimed by them, the plaintiff could, of course, show by oral testimony the actual arrangement made between the parties on said date, because there is no statute requiring the same to be in writing, and it does not violate the well-known rule that oral testimony cannot be given to alter, vary, or contradict a contract evidenced by writing.

We are unanimously of the opinion that there

was not an accord and satisfaction, as claimed by the defendants, but that there was a settlement, as claimed by the plaintiff, as and upon the terms claimed by him, "in full for all claims to date."

The next claim of the defendants is that the contract of August 11, 1922, is against public policy and void for two reasons:

(a) Because the plaintiff was hired to collect evidence for the defendants, and that his compensation depended upon the result of the suit in which it was to be used.

(b) Because the plaintiff was hired to collect and procure testimony to be used in evidence, his compensation depending upon the character of the testimony procured to be used in a suit to accomplish a particular result.

It is true that the plaintiff's compensation was contingent upon the result of the suit which was to be brought, and in which the evidence was to be used. It is also true that (a) and (b) are generally stated in the reported cases, and in the text-books, as one proposition, without any effort being made to separate them, but in 16 A. L. R., in the annotations on page 1440, the author says:

"There are *dicta* in several of the cases cited in the former subdivisions of this annotation, indicating that the courts thought that if the contract was to procure the evidence for a contingent fee it would not be upheld. But the decisions, so far as they have passed on the question, do not hold that the mere fact that the recovery is to be contingent upon the success of the suit is sufficient to nullify the contract."

And in *Haley* v. *Hollenback*, 53 Mont., 494, 165 P., 459, the court in a well-reasoned opinion says

that so long as the contract does not require the layman to do that which is prohibited by proposition (b), aforesaid, it is not against public policy; and that a litigant may also employ a layman to search for legitimate evidence and *bona fide* witnesses for a compensation contingent upon the success of the litigation.

In considering these propositions it should be remembered that it is the policy of the law to encourage freedom of contract, and that the courts should not interfere with this right unless it clearly appears that the execution of the contract will prejudice the public interest.

"The power of courts to declare a contract void as being against public policy is a delicate and undefined one, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." *Richmond* v. *Dubuque & S. C. Rd. Co.*, 26 Iowa, 191, and at page 202.

"Before a court should determine a contract which has been made in good faith stipulating for nothing that is *malum in se,* nothing that is made *malum prohibitum,* to be void as contravening the policy of the state, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial, not theoretical or problematical. * * * He is the safest magistrate who is more watchful over the rights of the individual, than over the convenience of the public, as that is the best government which guards more vigilantly the freedom of the subject, than the rights of the state." *Kellogg* v. *Larkin,* 3 Pin., (Wis.), 123, 136, 56 Am. Dec., 164.

"If * * * there is one thing more than any other which public policy requires, it is that men

of full age and competent understanding shall have the utmost liberty of contracting, and that contracts when entered into freely and voluntarily, shall be held good and shall be enforced by courts of justice." *Printing & Numerical Registering Co.* v. *Sampson,* 19 Eq. Cas. L. R., 462, quoted in *Diamond Match Co.* v. *Roeber,* 106 N. Y., 473, 482, 13 N. E., 419, 422 (60 Am. Rep., 464).

We are therefore of the opinion that as it does not clearly appear upon the face of the letter of August 11, 1922, that plaintiff was to furnish evidence of a particular kind to accomplish a certain result in an action at law, the contract as set out in said letter is not contrary to public policy. Taking the letter as a whole, the limitations therein contained, and the personnel of the parties, this conclusion is fully sustained; and, as is said in the opinion in *Haley* v. *Hollenback, supra:*

"The fact that the obligee may abuse the contract and make it operate to the public injury does not itself invalidate it. (Greenhood on Public Policy, p. 27.) Parties are entirely free to contract as they please, so long as the particular engagement is not prohibited by law and does not contemplate the doing of any illegal act. That an engagement may be made by its abuse to operate to the public injury is no reason that it should be declared void."

A discussion of the foregoing questions would be entirely unnecessary if it were not for the fact that the letter of August 11, 1922, is a part of the supplemental agreement of December 1, 1922, both of which are merged in and become parts of the consideration of the agreement of June 2, 1923, as claimed by the plaintiff, because this termination

agreement embraces all of the former negotiations and agreements.

By the agreement of December 1, 1922, the scope of the employment of the plaintiff was changed as to procuring evidence of fraud, and, according to the allegations of his second amended petition:

The "defendants proposed to plaintiff that, if he would go forward with his investigations and would obtain certain other and further information which they desired, they would bring ¡and prosecute actions which he had requested them to bring for the collection of all amounts of which they had been defrauded, as disclosed by plaintiff's investigations and reported to them, and would both pay him, within a reasonable time, a reasonable amount for his time and expense actually spent and to be spent by him on said work, and also would pay him, in addition to said reasonable amount for time and expenses, such further compensation, taking into account the amount of recoveries, as might then seem just and proper, which proposal plaintiff accepted and went forward with his investigations, and obtained and furnished defendants all information which they desired, and fully complied with all the terms of said employment of him thereby required to be done and performed by him until the 2d day of June, 1923  *  *  *."

By the terms of this new arrangement it conclusively appears that plaintiff was now to procure and furnish evidence of a particular kind to produce a certain result in a suit at law, which was to be brought by the defendant company. By this new arrangement, that which was indefinite in the first employment is now made definite and certain, and the things which the contract did not show

upon its face to make it against public policy are now established by the claims of the plaintiff, as shown in his amended petition and in the opening statement to the jury. We are therefore of the opinion, that, giving to this contract a strict construction, as required, it is within the prohibited class and void.

The third and last claim of the defendants will be considered in three parts:

(a) Is the last arrangement valid, notwithstanding the taint of illegality which was projected into the contract by the conditions of December 1, 1922?

(b) Was the contract of June 2, 1923, an agreement by which the defendants agreed to bring an action at law and for which damages may be obtained for a breach, in failing to do so?

(c) Did the defendants reserve unto themselves the right to decide whether a suit at law was to be brought?

We will take up and consider the first of the foregoing propositions. It is a fundamental rule of contracts that, in order to have a contract, there must be a consideration and it must be a valid one. The new arrangement of June 2, 1923, as alleged and proved by the plaintiff, was based entirely upon the services which he had theretofore rendered, both before and after December 1, 1922, and which necessarily included the investigation of and procuring of evidence of a particular kind to accomplish a particular result in a lawsuit, as hereinbefore pointed out. Of course, this latter proposition is not clearly shown from the arrangement of June 2, 1923, but it is made clear from a

reading of the second amended petition and the opening statement of plaintiff's counsel.

It does not make any difference how the arrangement may be made—whether orally or in writing, nor in what language it may be clothed—if the original consideration upon which it is based is void and unenforceable it always remains so, as every new arrangement in furtherance of and based upon the old void consideration is likewise void and unenforceable. The repetition of a void promise does not make it valid. We are therefore of the opinion that the arrangement of June 2, 1923, is likewise void and unenforceable.

We will next take up and consider proposition (b) of defendants' third claim.

From the terms of the second amended petition and the terms of the supplementary arrangement of December 1, 1922, we are of the opinion that the arrangement was to the effect, in the language of the plaintiff:

"That defendants would fully co-operate with him in the future and would promptly bring the actions which he had suggested for the recovery of the amounts out of which the company had been defrauded as aforesaid, and prosecute such actions without delay and would pay him further compensation as aforementioned, based upon the amount of such recoveries."

This is corroborated by other allegations of the petition, to-wit:

"That the defendants have brought no actions, civil or criminal, against the other company and its stockholders as aforesaid," and "that defendants then also conspired to cover and hush up said

frauds and to stifle all prosecutions, civil and criminal.''

From these allegations it is clear that this amounted to an arrangement to bring a law suit, and that the cause of action stated in the second amended petition is one for breach of contract in failing to bring such suit.

This, then, takes out of the control of the defendant company its right to determine whether or not it will bring a lawsuit involving questions in which it alone is interested, and places such control in the hands of a third party, who has no interest in said suit or the property involved therein, except that based upon a fee, the payment of which is contingent upon the result of the suit. If this could be done, and if the plaintiff had this right, he could do by implication and indirection that which he could not do directly and by an express contract. *Davy* v. *Fidelity & Casualty Ins. Co.*, 78 Ohio St., 256, 85 N. E., 504, 17 L. R. A. (N. S.), 443, 125 Am. St. Rep., 694. For this reason, again, the contract is void and unenforceable.

We will now take up and consider proposition (c) of defendants' third claim.

When the petition and statement are considered together we cannot escape the conclusion that the foundation of plaintiff's complaint is the defendants' failure to bring a lawsuit. If the defendants did not agree to bring a lawsuit, but reserved the right to decide not to do so without being liable to plaintiff except for his time and expenses, which have been fully paid, then the plaintiff has no cause of action, because the only object of a suit is to force collection, and if defendants were not bound to force collection they were not bound at all be-

yond the matter of compensation for time and expenses, which has been adjusted and paid.

The petition and statement are inconsistent with the theory that the contract was merely to obtain money by settlements, and without suit, and the statement that defendants had funds in their hands belonging to those who had defrauded them, and refused to withhold same, is in effect merely a statement that they refused to do that which would result in the bringing of a suit, and if they were required to bring a suit, or to take such action in withholding money from such other company as would result in their having to justify such withholding in a suit, the contract in either event is against public policy.

For the reasons stated, we are unanimously of the opinion that the judgment should be and it is affirmed.

*Judgment affirmed.*

WASHBURN and FUNK, JJ., concur.

Judges of the Ninth Appellate District, sitting in place of Judges ROBERTS, FARR and POLLOCK of the Seventh Appellate District.