[No. 11552.   Department One.   May 5, 1914.]

WILD ROSE ORCHARD COMPANY, *Respondent*, v. WILLIAM
CRITZER *et al., Appellants.*[1]

PLEADING—COMPLAINT—WAIVER OF OBJECTIONS AND PROOF.   In an
action upon an attachment bond for wrongful attachment, the fact
that the damages sustained had not been paid is tacitly admitted,
although not directly pleaded in the complaint, where no demurrer
was interposed and the only defense pleaded or raised during the
trial was that the attachment was rightfully issued on the advice of
counsel and with probable cause.

ATTACHMENT — WRONGFUL ATTACHMENT — PROBABLE CAUSE —
GROUNDS—EVIDENCE—SUFFICIENCY.   Probable cause for issuing an
attachment on the ground that defendant was about to dispose of its
property for the purpose of defrauding creditors does not appear
from the mere fact of indebtedness to others and inability to pay
up and an offer to turn over a team in payment of a debt, where the
plaintiff finally admitted that he never knew or heard of defendant's
trying to dispose of its land or personal property except the team of
horses.

SAME—WRONGFUL ATTACHMENT—DEFENSES—ADVICE OF COUNSEL.
It is no defense to an action for wrongful attachment that it was
issued on the advice of counsel, where the facts relied on and stated
to the attorney were no more than sufficient to raise a suspicion of
insolvency.

SAME—WRONGFUL ATTACHMENT—DEFENSES—ADVICE OF COUNSEL—
PRESUMPTIONS.   The presumption of probable cause for the issuance
of an attachment upon the advice of counsel arises only when it ap-
pears that all of the facts were submitted to the attorney.

SAME — WRONGFUL ATTACHMENT — ACTIONS — PROVINCE OF COURT
AND JURY.   Whether particular facts constitute probable cause for
the issuance of an attachment is a question exclusively for the court;
what the facts are, is a question for the jury when there is any con-
troversy in reference thereto.

APPEAL—HARMLESS ERROR—EVIDENCE.   Error cannot be predicated
on the rejection of evidence where the same was afterwards admitted.

ATTACHMENT — WRONGFUL ATTACHMENT — MEASURE OF DAMAGES.
Damages for a wrongful attachment are not excessive where they
were limited to those actually sustained on account of the loss of the
use of a team of horses attached.

[1]Reported in 140 Pac. 561.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered March 21, 1913, upon findings in favor of the plaintiff, in an action in tort, tried to the court. Affirmed.

*Harris Baldwin*, for appellants.

*E. O. Connor*, for respondent.

ELLIS, J.—This is an action for damages for an alleged wrongful attachment, against the attaching creditor and his sureties on the attachment bond. On February 18, 1911, the defendant Critzer brought an action against the plaintiff herein, upon a promissory note, and in that action sued out a writ of attachment and caused it to be levied upon personal property of the plaintiff herein. The present action was tried to the court without a jury. At the close of the evidence, the defendants moved for a judgment in their favor. The motion was denied. The court found, in substance, that on February 18, 1911, the plaintiff owed one hundred and sixty acres of land, in Spokane county, was engaged in the orchard and nursery business, growing fruit trees, selling orchard tracts by the acre, issuing to purchasers bonds secured by a trust deed on lands so sold, each acre of which was cultivated and planted to orchard, and owned and used daily in the prosecution of its business certain described personal property, including, among other things, a team of horses, all of a value of $1,500; that, on that date, the defendant Critzer, in his suit on the note above mentioned, made an affidavit for an attachment, alleging that the plaintiff was about to dispose of its property with intent to delay its creditors, and was about to convert its property or a part thereof into money for the purpose of placing it beyond the reach of its creditors; that, at the same time, the defendant Critzer executed and filed a bond for attachment in the sum of $850 with the defendants Freeman and Olson as sureties thereon, and thereafter caused a writ of attachment to issue, under which the sheriff of Spokane county, on February 19, 1911,

took into his possession the personal property of the plaintiff, and held it until June 16, 1911, when the attachment was finally dismissed; that the defendant Critzer took into his possession the team of horses and kept them in his possession and from the possession of the plaintiff up to May 14, 1911; that the attachment was dissolved by the superior court of Spokane county on March 3, 1911; that an appeal was taken by Critzer from the order of dissolution to the supreme court of this state, which appeal was dismissed in that court on June 16, 1911. The evidence fully sustains the foregoing findings.

Though the court made no specific finding of the fact, it seems to be admitted that the note was paid a few days before the time set for the trial of the main action in which the attachment was issued, and that this payment led to the final dismissal of the appeal.

The court also found that there was no reasonable cause for a belief on Critzer's part of any of the grounds alleged in his affidavit for the attachment; that, while the orchard company owed certain debts and its property was encumbered, there was no intention to sell or dispose of its property with intent to delay its creditors or with intent to convert its property into money for the purpose of placing it beyond the reach of its creditors; that there was no reasonable cause for the issuance of the writ; and that it was wrongfully sued out. The court further found that the plaintiff herein was compelled to employ an attorney to resist the attachment, the reasonable value of whose services is the sum of $100, and that the plaintiff was injured by reason of being deprived of the use of its personal property and being deprived of the use of its horses in the sum of $332.50. Upon appropriate conclusions of law, a judgment was entered in favor of the plaintiff for those sums and costs. The defendants appealed.

The appellants claim that the court erred: (1) In overruling their motion for judgment because there was no averment in the complaint, nor direct proof, that the damages

for which plaintiff sues have not been paid; (2) in finding
that there was no reasonable cause for the attachment; (3)
in rejecting evidence offered tending to show reasonable
cause; (4) in holding the evidence sufficient to prove any
damage.

I.   That both allegation and proof of damages, and that
they have not been paid, are necessary to a recovery in an
action upon an attachment bond, is, of course, too well
recognized as an abstract principle of law to admit of contro-
versy.  *Church v. Campbell*, 7 Wash. 547, 35 Pac. 381.  But
it does not follow that a tacit acceptance of the fact of non-
payment, as a fact, both in the pleadings and throughout
the trial, does not constitute a waiver of proof of that fact.
In the present case, no demurrer was interposed to the com-
plaint, and the only defense pleaded in the answer, or raised
during the trial, was that the attachment was issued on the
advice of counsel and with probable cause.  No objection on
the ground mentioned was offered to the introduction of the
evidence tending to show a want of probable cause and the
damages suffered.  No motion for a nonsuit was interposed
at the close of the respondent's evidence on the ground of
failure to prove nonpayment, or upon any other ground.
The defense that the attachment was rightfully sued out,
and the evidence offered in its support, were a tacit admis-
sion that the damages had not been paid.  Even now there
is no claim that any damages had been paid or any payment
tendered.  It would be a clear sacrifice of substance to form
to reverse the judgment because a thing, which the nature of
the only defense pleaded tacitly admits, was not formally
alleged and proved.  In *Knapp & Spalding Co. v. Barnard*,
78 Iowa 347, 43 N. W. 191, where the question arose upon
the sufficiency of a counterclaim of damages for wrongful
attachment, the court, recognizing the general rule, but re-
fusing to apply it to a situation such as here presented, said:

"In this case the alleged wrongful suing out of the writ,
and the damages which defendants were entitled to recover

therefor, were the only issues tried.    The question of pay-
ment was not in any manner raised.    It was contended by
appellant that the writ was rightfully sued out, that it had
not been guilty of any wrongful act, and that defendants had
not sustained any damages which constitute a valid claim
against plaintiff.    Under these circumstances, we think plain-
tiff should be held to have waived the right to take advantage
of the omission of the answer now urged."

II.    A careful consideration of all the evidence touching
the subject convinces us that the appellant Critzer had no
reasonable or probable cause to believe the grounds stated in
the affidavit upon which the attachment was issued.    His own
investigation seems to have been very superficial.    He made
certain inquiries of the appellant Olson, who was chief stock-
holder in another company to which the respondent owed a
debt of $700.    He testified that Olson told him that the real
estate of the respondent was so encumbered that it could not
be reached by judgment; that he (Olson) had threatened to
sue, and Wright, the manager of the respondent, had replied
that nothing could be collected from the respondent.    Critzer
further testified that his brother also told him there was no
use suing as he had brought suit against the respondent and
Wright had told him if he thought he could get anything to
go ahead and get it.    He also testified that one Reep, who had
been employed as foreman by respondent told him that the re-
spondent owed Reep considerable money, and had offered to
turn over the team of horses in payment.    He testified that
he saw the respondent's nursery stock, but admitted that he
did not know what it was worth, and made no investigation as
to its value.    Finally, he admitted that he never knew or
heard of the respondent trying to dispose of its land or per-
sonal property, except the team of horses.

The advice of the attorney was, according to the attorney's
own testimony, based upon what the appellant Critzer had
told him, and upon his own investigation of the records in
the auditor's office, which disclosed that the respondent had
no unincumbered real estate.    The attorney also testified

that Wright told him that the company could not pay the
note at the time, but hoped to be able to pay it soon.  What
Critzer told him, the attorney did not disclose.  Presum-
ably it was no more than Critzer himself testified to.  If it
was anything more specific, then it is fair to assume that it
was not true.  There was evidence that the respondent had
a considerable acreage of nursery stock, which, if properly
marketed, would have sold for $15,000.  There was no evi-
dence that Critzer's attorney knew anything about this nur-
sery stock or was ever informed of it or had any knowledge
of its value.  It seems clear that he did not know all of the
facts when he advised the attachment.  If Critzer told him
the truth, he told his attorney nothing as to the value of this
nursery stock, and told him of no sale, or attempted sale, or
contemplated sale, either of his own knowledge or accord-
ing to rumor, except what Wright had said concerning the
team.  What Critzer claims to have learned, combined with
what his attorney had learned from the records, taken as
established facts, were no more than sufficient to raise a sus-
picion that the respondent might be insolvent.  They were
by no means sufficient to raise even a suspicion that it was
transferring, or contemplating a transfer or sale, of any of
its property to defeat its creditors.  Insolvency alone is no
ground for attachment (Rem. & Bal. Code, § 648; P. C. 81
§ 415).  It is clear that the combined knowledge of both
Critzer and his attorney did not constitute a sufficient basis
for the affidavit upon which the attachment was issued.

The appellants, however, insist that probable cause will
be presumed when the attachment is issued upon the advice
of an attorney.  Many authorities hold that probable cause
is only material where exemplary damages are involved, and
that advice of an attorney is no defense to a claim for actual
compensatory damages.  *Birmingham Dry-Goods Co. v. Fin-
ley,* 122 Ala. 534, 26 South. 138; *Yarborough v. Weaver,*
6 Tex. Civ. App. 215, 25 S. W. 468; *Schofield v. Territory
ex rel. American Valley Co.,* 9 N. M. 526, 56 Pac. 306;

4 Cyc. 861; Waples, Attachment and Garnishment (2d ed.), § 1018.

This court, however, has held:

"That probable cause is a question of law, in this far, at least, that probable cause will be presumed when the action has been commenced by the advice of attorneys to whom has been submitted all the facts in the case." *Levy v. Fleischner*, 12 Wash. 15, 40 Pac. 384.

Under the provisions of our statute, (Rem. & Bal. Code, § 654; P. C. 81 § 427), which makes proof that there was no reasonable cause for the attachment necessary to a recovery on an attachment bond for wrongful attachment, that decision seems inevitable. But that case, which goes as far as any to which our attention has been called, holds the presumption of probable cause arises from the advice of an attorney only when it appears that all of the facts have been submitted to the attorney. What facts, and whether the particular facts in a given case constitute probable cause, is a question exclusively for the court. What are the facts existing in the given case, where there is any controversy in reference thereto, is a question exclusively for the jury, unless a jury is waived. *Voss v. Bender*, 32 Wash. 566, 73 Pac. 697; *Burton v. St. Paul, M. & M. R. Co.*, 33 Minn. 189, 22 N. W. 300. As pointed out in *Voss v. Bender*, these rules apply even where the attachment is issued pursuant to the advice of an attorney.

Applying these rules to the present case, the evidence justified a finding that there were no facts showing, or reasonably tending to show, that the respondent was disposing of, or seeking to dispose of, any of its property for the purpose of defrauding its creditors. Such being the particular facts, it follows, as a matter of law, and as a question exclusively for the court, that they did not constitute probable cause for the issuance of the attachment on the grounds upon which it was issued. It appearing that the attorney, in giv-

ing his advice, acted upon imperfect knowledge in that he was not possessed of all of the facts in the case, his advice does not raise a presumption of reasonable cause, even under the rule declared in *Levy v. Fleischner, supra,* much less under that rule as explained in *Voss v. Bender, supra.* The trial court committed no error in holding that there was no probable cause for this attachment, and that it was wrongfully issued.

III. We find no merit in the claim that the court erred in rejecting evidence offered tending to show reasonable cause for the attachment. The record shows that the same evidence which was at first rejected was afterwards admitted, and much more of the same character.

IV. Neither do we find any merit in the claim that the evidence of damages was insufficient to sustain the judgment. The damages were confined to the actual damages. Nothing was allowed as punitive or exemplary damages. The court, in the course of the trial, received no evidence of general damages, but limited the damages to those sustained on account of the loss of the use of the team of horses. We fail to find that the damages recovered were excessive, or that they were not sustained by a fair preponderance of the evidence.

The judgment is affirmed.

CROW, C. J., MAIN, GOSE, and CHADWICK, JJ., concur.