**ADLEY EXPRESS CO., Inc. v. CORN EX-
CHANGE BANK TRUST CO.**

United States District Court
S. D. New York.

July 30, 1951.

Cooke, Armstrong & Grant, New York City, (Thomas T. Cooke, New York City of counsel), for plaintiff.

Spence, Hotchkiss, Parker & Duryee, New York City, (James H. Halpin and John J. Sullivan, New York City, of counsel), for defendant.

WEINFELD, District Judge.

These are cross-motions for summary judgment in an action wherein plaintiff seeks to recover fees, disbursements and expenses incurred by it in a proceeding in the New York State Supreme Court upon the ground that such litigation was improperly thrust upon it by the defendant herein who was the petitioner therein.

It seeks recovery upon two causes of action: (1) breach by the defendant (also referred to hereinafter as the "Trustee") of its obligations under a Trust Agreement wherein plaintiff was the Settlor and (2) malicious prosecution of a legal proceeding without probable cause.

Plaintiff moves for summary judgment only on its first cause of action conceding that the question of probable cause in the second is one of fact, which may not be determined on affidavits. Defendant, however, presses its cross-motion in both actions.

The following are the facts which gave rise to the present litigation. On November 1, 1943, the plaintiff (also referred to hereinafter as the "Settlor") adopted, as of December 31, 1943, an Employees' Profit-Sharing and Retirement Plan for the exclusive benefit of its employees. A provision in the Plan that plaintiff would make contributions to the trust fund from its profits as determined by its Board of Directors was subsequently amended so as to specify an exact percentage of annual profits to be paid into the fund.

Administration of the Plan was vested in a Committee appointed by the plaintiff's Board of Directors. Complete authority to determine rights and benefits of employees, the extent of participation and any claim under the Plan was lodged in the Committee. The Plan was implemented by a Trust Agreement, executed December 14, 1943, wherein the defendant was designated as Trustee to receive and disburse for the benefit of eligible employees such funds as might be paid to it by the plaintiff as Settlor.

The Agreement also granted to the Company and the Committee "the exclusive right to enforce any and all provisions" on behalf of all participants or beneficiaries. It also provided that "In any action or proceeding affecting the Trust Fund or the administration thereof or for instructions to the Trustee, the Company, Committee and the Trustee shall be the only necessary parties and no Participant * * or any other person having or claiming to have * * * an interest in * * * the Trust Fund shall be entitled to any notice or process * * *."

The Trustee's duties, obligations and rights were expressly limited to the terms and provisions of the Trust Agreement which also provided that it was not bound to any extent by the terms and provisions of the Plan.

The Trustee was required to make payments from the trust fund to such persons and in such amount as directed by the Committee. Although the Committee was enjoined from directing any payment either during the existence or upon the discontinuance of the Plan "which would cause any part of the Trust Fund to be used for or diverted to purposes other than for the exclusive benefit of the Participants or their Beneficiaries" nonetheless the Trustee was to be fully protected in acting "upon any such written direction of the Committee without inquiry or investigation and shall have no duty to determine the rights or interests of any person in the Trust Fund or under the Plan or to inquire

into the right or power of the Committee to direct any such payment." Similar protection was granted to the Trustee as to claims against the fund by any participant or beneficiary, the agreement providing that no such person "shall have any claim against the Trustee by virtue of any of the provisions of the Plan."

As of December 31, 1943, the plaintiff deposited securities with the Trustee, of the value of $19,783.70. Subsequently it developed that there had been no profits for that year. So, too, there were none in 1944 and 1945. Accordingly in November 1945 plaintiff gave preliminary notice to the defendant of termination of the Trust Agreement. In its communication it stated that the Plan had not been put into effect and had never been announced to its employees. It contended that the amount in the Trust Fund was intended as a prepayment but there had been no profit since the Plan was initiated and that no contribution had been made to the Plan.

Thereafter in December 1946 it passed a formal resolution abandoning its intention to establish the Plan and withdrawing from the Trust Agreement. This resolution, together with a certificate by the Committee certifying that no employee had any interest, or was entitled to participate, in the fund was forwarded to defendant with a demand for the return of the fund to plaintiff. The Trustee refused to deliver the assets contending that distribution was required to be made to the Settlor's employees at the time of giving notice of termination, although it admitted that under the termination clauses in the plan and trust, plaintiff was relieved from making contributions in the future. The basis of its position, at least in part, was that the purpose of the trust under the Federal Tax Law was to create an irrevocable trust.

The Trustee then instituted a proceeding in the Supreme Court of the State of New York under Article 79 of the Civil Practice Act for a judicial settlement of its account, and for leave to resign and to turn over the fund to a successor trustee. Trustee, as petitioner in that proceeding obtained an order permitting service by publication directed to the plaintiff, the Committee under the Plan, and all persons who were in the employ of the plaintiff since December 14, 1943 as unknown persons who were or might be interested in the trust to show cause why the requested relief should not be granted. Following completion of publication only plaintiff appeared and offered no objection to the correctness of the account. In addition, it interposed a counterclaim for the return of the deposit to which defendant entered a general denial.

The Court appointed a guardian ad litem to represent unknown beneficiaries. The issues raised by the counterclaim were referred to an Official Referee who, after conducting hearings, recommended the return of the fund to the Settlor. The Court at Special Term, holding that the plaintiff did not deposit the fund under a mistake of fact but under a mistake of judgment, declined to follow the recommendation of the Referee and dismissed the counterclaim. In re Corn Exchange Bank Trust Co., Sup., 87 N.Y.S.2d 675. Upon plaintiff's appeal, the Appellate Division of the New York State Supreme Court reversed the Special Term and ordered the fund returned as having been deposited under a mutual mistake of fact as to plaintiff's earnings in 1943. Matter of Corn Exchange Bank Trust Co. (Adley Express Co.), 276 App.Div. 430, 95 N.Y.S.2d 210.

In the proceedings various allowances were granted pursuant to Court orders to the Trustee, its attorneys, the guardian ad litem, and disbursements, all payable from, and amounting to a very substantial part of, the fund. Plaintiff now seeks to recover such sums and in addition its own counsel fee.

The first cause of action alleges various breaches by the defendant of the Trust Agreement, consisting of refusal to return the deposited funds despite the Committee's direction; examination into the disposition of the fund; undertaking to enforce the agreement on behalf of participants and beneficiaries; causing service by publication on "non-existent" participants and beneficiaries; depriving the Committee of

exclusive control over the administration of the Plan and of rights arising thereunder; preventing the Committee from determining questions as to the interpretations and administration of the Plan.

The second cause of action is based upon the defendant's opposition to the counterclaim. Here the burden of the complaint is that since plaintiff offered no objections to the account, the defendant was fully protected and the accounting proceeding was unnecessary; moreover, no necessity existed for any litigation of the issues of defendant's counterclaim because under the terms of the Trust Agreement (a) defendant had no right to litigate such matters, inasmuch as the right to determine the disposition of the fund was the sole prerogative of the Committee under the Plan; (b) no participant or beneficiary had any right to make any claim against the defendant and (c) defendant had the right to rely upon the advice of the Committee and/or the legal advice of Adley's counsel, or its own counsel with respect to its obligations under the agreement and so relying would be protected in good faith.[1] Accordingly plaintiff charges that the litigation with respect to the return of the deposit was instituted by defendant maliciously and without probable cause to believe that it had a right to institute it.

The hard core of plaintiff's contention appears to be, not the institution of the accounting proceedings, even though that, too, is questioned, but the interposition of a general denial to the counterclaim asserted for the return of the fund. The plaintiff contends that not having disputed the correctness of the defendant's account the latter both by decree of the Court and under the Trust Agreement would have been judicially discharged from any liability to employees and hence its contesting plaintiff's demand for the return of the fund projected it into litigation which at once was a breach of the Trust Agreement and the maintenance of litigation maliciously and without probable cause.

On the plaintiff's motion for summary judgment on the first cause of action the answer is two-fold: (1) a specific provision in the agreement which provided that the "* * * Trustee shall have the right, if it at any time determines that it is desirable, to apply to a Court of competent jurisdiction for judicial settlement of its acount." While the Trust Agreement undoubtedly granted broad and in some respects conclusive powers to the Committee with respect to determining the rights of participants to the Fund, including a provision whereby in the absence of objections to any account rendered by the Trustee following the expiration of a 60 day period it was to be deemed conclusive as to all persons claiming an interest therein, these cannot deprive the defendant of its right to seek a judicial accounting. (2) The Trust Agreement also contained a provision that the defendant was entitled to rely on the legal advice of its own counsel. True this clause permitted defendant, if it were so inclined, to accept the legal guidance of plaintiff's counsel but it also had the undoubted right to follow the judgment of its selected counsel.

Finally the Appellate Division upon the defendant's cross-appeal from that part of the order which denied it reimbursement for the expense of publication, reversed and directed payment of the expense. Implicit in the reversal must be a finding of some merit to the defendant's contention that employees might have an interest in the fund; otherwise it is difficult to understand the theory on which reimbursement was ordered, payable out of the fund, of a substantial printing expense intended to give notice to such persons.

Under the circumstances plaintiff is not entitled to summary judgment, as an issue of fact exists as to whether or not there was a breach of the agreement.

We next consider the defendant's cross-motion with respect to both causes of action. First, it urges that the prior proceedings are res judicata of the issues involved herein. It also contends that

1. The complaint contains no allegation that defendant did not rely upon the advice of its own counsel in resisting payment to plaintiff.

despite plaintiff's assertion of two causes of action the essence of the complaint is malicious prosecution, and it may not succeed because there was no interference with its property by resort to provisional remedy such as attachment or injunction.

 As to the claim of res judicata it is apparent from the opinion, findings of fact and conclusions of law of the Appellate Division that the only issues decided were the right of plaintiff to recover the assets as having been paid under a mistake of fact and the validity of the account of defendant as Trustee and its right to resign. Ancillary to these issues was the question of counsel fees, guardian fees, compensation to the Trustee and allowance of the expense of service by publication and denial of the Trustee's application to retain a reserve for taxes.

The question of whether defendant's resistance to plaintiff's demand for the return of the fund constituted a breach of the contract was neither raised nor adjudicated. The issue in the instant action is whether the Trustee's institution of the accounting proceeding, or, more accurately, its opposition to plaintiff's counterclaim, was in direct contravention of the Trust Agreement and the specific restrictive powers upon the Trustee and in disregard of the broad powers vested in the Committee. Accordingly the determination in the State Courts is not res judicata of the issues herein.

The doctrine of estoppel by record is also inapplicable. The rule is that "A judgment in one action is conclusive in a later one, not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first. * * It is not conclusive, however, to the same extent when the two causes of action are different, not in form only * * * but in the rights and interests affected. The estoppel is limited in such circumstances

to the point actually determined." Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 165 N.E. 456, 457.

The Federal Rule is to the same effect. Nesbit v. Riverside Independent District, 144 U.S. 610, 614, 12 S.Ct. 746, 36 L.Ed. 562; Troxell v. Delaware, L. & W. R. Co., 227 U.S. 434, 33 S.Ct. 274, 57 L.Ed. 586; United Shoe Machinery Corp. v. U. S., 258 U.S. 451, 458, 42 S.Ct. 363, 66 L. Ed. 708.

In the State Court proceeding the matter litigated was the right of the plaintiff to recover the funds upon the ground that having been paid under a mistake of fact they were not subject to distribution under the terms of the plan and trust—incidentally a right which the Appellate Division upheld on the ground that the assets never did belong to the trust and so relief on the counterclaim was not dependent upon the termination or recapture clauses in the Trust Agreement.[2] In the instant action plaintiff attacks the right of the Trustee to have contested its counterclaim. Thus, a "different judgment", that is, an adjudication that defendant either had or did not have such power will not "destroy or impair rights or interests established by the first" proceeding. The test for the applicability of the doctrine is not met under Schuykill Fuel Corp. v. Nieberg Realty Corp., supra, 250 N.Y. at page 308, 165 N.E. 456.

 We next consider defendant's plea that it had the right to consult with its own general counsel with respect to the "construction of the Trust Agreement and its obligations or duties thereunder" or "with respect to any action or proceeding or any question of law", and that it is "fully protected with respect to any action taken or omitted by it in good faith pursuant to the advice of legal counsel." Under this exoneration clause an issue exists as to whether the Trustee did so act on the advice of its counsel and in good faith. Defendant cites testimony taken in the proceeding to establish its reliance upon advice of counsel and that it

2. Conclusion of Law #2.

acted in good faith but that issue was not tendered there or considered by the New York Courts. Since there exists an issue on the question of good faith, defendant's motion for summary judgment as to the first cause of action is also denied.

 There remains for final consideration defendant's cross-motion for summary judgment on the second cause of action for malicious prosecution. The attack is twofold: (1) that no claim for malicious prosecution can be made since no provisional remedy was used in the prior proceeding and (2) that its conduct in that litigation was based upon probable cause.

The law is well established in New York that unless there is interference with the person or property by a provisional remedy such as arrest, injunction or attachment as an incident to the maintenance of an action, a suit for malicious prosecution will not lie despite the fact that the action was instituted maliciously and without probable cause. Paul v. Fargo, 84 App.Div. 9, 82 N.Y.S. 369; Sachs v. Weinstein, 208 App. Div. 360, 203 N.Y.S. 449; Sunkist Drinks, Inc., v. California Fruit Growers Exchange, D.C., 25 F.Supp. 400, 401. The latter case states the rationale of the rule. "While the party proceeded against is generally put to expense beyond his recovery of costs, public policy requires that parties may freely enter courts to settle their grievances, without imminent exposure to a suit for damages in case of an adverse decision, and that litigation may not be interminably prolonged."

In instituting the proceeding for a judicial settlement of its account and in opposing the counterclaim for the return of the funds to plaintiff, no provisional remedy was availed of whereby there was interference of the plaintiff's property. The fund was in its possession through the voluntary act of the plaintiff. It was retained after demand for its return under a colorable claim. The fact that the Court below ruled against its return, even though the Appellate Division held to the contrary, establishes that there was some substance to its position.

The defendant's motion for summary judgment on the second cause of action is granted. This disposition makes it unnecessary to consider the issue of malice and lack of probable cause.

Settle order on notice.