[No. 32429.   Department Two.   February 15, 1954.]

JESSE PETRICH, *Respondent*, v. HAZEL KIRK MCDONALD, *Appellant*.[1]

*Bogle, Bogle & Gates* and *Orlo B. Kellogg*, for appellant.

*George J. Toulouse, Jr.*, and *Torbenson, Baum & Thatcher*, for respondent.

DONWORTH, J.—Plaintiff instituted this action to recover damages from defendant for malicious prosecution of an earlier civil action for the foreclosure of a preferred ship mortgage. The jury returned a verdict for the plaintiff. Alternative motions for judgment notwithstanding the verdict and for new trial having been made and denied, the court entered judgment for plaintiff. Defendant has appealed.

The events leading up to this litigation are as follows:   In February, 1947, respondent, being indebted to appellant

[1]Reported in 266 P. (2d) 1047.

for approximately twenty-five thousand dollars, gave appellant a preferred ship mortgage on his vessel, the "Aleutian Mail," as security for fifteen thousand dollars of this debt. By the terms of this mortgage, appellant was to make monthly payments beginning on October 1, 1947, and running through September 1, 1950. The remainder of the debt was unsecured.

Respondent used the "Aleutian Mail" to transport United States mail between points in Alaska and with the money so earned made several monthly payments on the mortgage. Early in 1948, the vessel ran aground and suffered considerable damage, necessitating its return to Seattle for repairs. As a result, respondent lost his mail contract and wanted to work out some arrangement with appellant to relieve respondent of the obligation of making regular monthly payments on his debt. He contacted an attorney, who in turn arranged for the parties to meet in his office on April 1, 1948, and discuss the problem. At the conclusion of that discussion, the following agreement was reduced to writing by the attorney and signed by the parties:

"MEMORANDA OF AGREEMENT.
"WHEREAS, Hazil Kirk McDonald has heretofor advanced the sum of $24,666.70 unto Jesse H. Petrich of Clinton, Washington; $12,666.70 of which sum is evidenced by a note secured by a mortgage on the M. S. Aleutian Mail; the balance of which sum is evidenced by an unsecured personal note,
"and, WHEREAS, Hazel Kirk McDonald is desirous of having the entire sum of $24,666.70 secured by a mortgage upon the above mentioned vessel:
"and, WHEREAS, Jesse H. Petrich is desirous of liquidating said sum.
"Now, THEREFORE, it is hereby agreed as follows:
"1. Jesse H. Petrich agrees to place said vessel in the fishing trade as a cod fisherman and to execute a note payable unto Hazel Kirk McDonald in the sum of $24,666.70 and to secure said note by a mortgage upon said vessel; said note to be paid as follows:
"a. The vessel's share of the above named venture will be 25% of the gross revenue therefrom, from which share the insurance premium upon said vessel shall first be paid and the balance of said 25% shall be apportioned as follows:
"Two thirds thereof to Hazel Kirk McDonald to be ap-

plied in the following manner; first to the payment of a bonus in the sum of $1500.00 per annum which Jesse H. Petrich hereby agrees to pay unto Hazel Kirk McDonald in consideration of the covenants herein and secondly to the principal balance of said note until paid.

"2. Hazel Kirk McDonald hereby agrees to cancel, void and nullify the present existing notes and mortgage upon delivery of the note and mortgage herein referred to.

"Signed and Sealed, in triplicate, this 1st day of April, 1948.

[sgd] Jesse H. Petrich

[sgd] Hazel Kirk McDonald"

Parenthetically, it should be stated that, although the fact was not discovered by appellant until August, 1948, respondent on April 27, 1948, caused his vessel to be registered with the collector of customs for mackerel fishing instead of cod fishing.

A new mortgage was prepared by a customs broker to carry out the terms of the April 1st agreement. When appellant called at the broker's office on April 30, 1948, to receive the new mortgage, she noticed that it contained a provision for a twenty-year maturity and therefore refused to accept it or to cancel the existing note and mortgage. It was her contention that it had been agreed that the new mortgage would have the same maturity date as the old one and that her refusal to accept the new mortgage was justified because the written agreement of April 1st was "too indefinite."

Respondent testified that he and appellant had a telephone conversation in which he suggested that a new mortgage be prepared with a five-year maturity date. He testified that appellant agreed to accept this provision. She denied any such agreement. Respondent testified that she came to see him at the shipyard where his vessel was being repaired and stated that she wanted her money. He replied that under the April 1st agreement he was not obligated to pay anything until he went fishing and returned with his catch. He further testified that she made derogatory remarks concerning the April 1st agreement, said that she did not consider it "legal," and when he still refused to pay stated, "Well, By Golly, I'll break you, then."

Appellant denied having spoken with respondent after April 1, 1948, and especially denied ever having threatened to break respondent if he did not pay the balance due on the mortgage.

Early in August, 1948, appellant consulted Mr. Chester Lesh, an attorney, regarding her difficulties with respondent. As a result of this consultation, Mr. Lesh twice visited respondent in an attempt to collect overdue payments on the original mortgage, but respondent again refused to pay, saying that he had agreed to make payments only out of the proceeds of the sale of any fish which he might catch.

Mr. Lesh associated with him as counsel for appellant an experienced admiralty attorney. Appellant held several more discussions with her attorneys. On the basis of the facts which she related to the attorneys, she was advised to file a libel *in rem* against the vessel in the United States district court at Seattle for the purpose of foreclosing the mortgage. On August 28, 1948, such an action was instituted by appellant, and a writ of monition and attachment was sued out directing the United States marshal to seize the vessel. Thereafter, other creditors intervened, asserting maritime liens against the vessel and likewise causing it to be arrested by subsequent writs of monition and attachment.

The foreclosure action came on for trial promptly, and on November 19, 1948, the United States district court held that the April 1st agreement stated "the objectives of both parties as of that time [April 1, 1948] with respect to the entire unfinished loan transaction between the parties, . . . and in the accompanying note fixes a definite five-year maturity date for final payment." The court then entered findings of fact and a final decree dismissing appellant's libel and ordering her to pay certain costs.

Thereafter, this suit was instituted by respondent in the superior court for Island county. The complaint alleged, in substance, that the libel action was based upon such facts that appellant, even under the advice of counsel, could not reasonably have expected to prevail, and that the writ of monition and attachment was wrongfully and maliciously

sued out for the purpose of preventing respondent from using his vessel in a gainful employment.

The first of appellant's eighteen assignments of error is that the trial court erred in denying her motion for judgment n.o.v., which was based on the rule of law that there can be no liability for the malicious prosecution of a *civil* suit without probable cause "when there has been no arrest of the person or attachment of the property of the defendant, and no special injury sustained, or injury which is not the necessary result in such suits." *Abbott v. Thorne*, 34 Wash. 692, 76 Pac. 302.

In support of her first assignment, appellant cites the *Abbott* case, *supra*, and *Manhattan Quality Clothes v. Cable*, 154 Wash. 654, 283 Pac. 460.

Grammatically, the above-quoted rule, first enunciated in this state in the *Abbott* case, *supra*, is subject to two interpretations. One meaning, apparently accepted by the trial court, is that a cause of action for malicious prosecution of a civil suit can not be maintained when there is neither (1) an arrest of the defendant, or (in the alternative) attachment of his property, *nor* (2) special injury sustained, or (in the alternative) injury which would not necessarily result in such suits.

The other meaning, adopted by the supreme court reporter in 1904 when the case was decided, is that a cause of action for malicious prosecution will not lie when there is neither (1) an arrest, or (in the alternative) attachment of property, nor (2) special injury sustained (meaning an injury which would not necessarily result in similar suits).

The second headnote to the *Abbott* case, *supra*, summarizes the holding as follows:

"An action for the malicious prosecution of a civil suit without probable cause will not lie when there was no arrest of the person or seizure of property therein, and no special injury sustained *which would not necessarily result in all like prosecutions.*" (Italics ours.)

While this court has never had occasion to decide which is the correct interpretation of the rule, a re-examination of the opinion and the cases cited therein makes it

clear that the interpretation placed upon the rule by the reporter's headnote is correct.

As authority for the rule, this court cited with approval two Iowa cases. In *Wetmore v. Mellinger*, 64 Iowa 741, 18 N. W. 870, 52 Am. Rep. 465, it was said:

"We think the doctrine is well established by the great preponderance of authority that no action will lie for the institution and prosecution of a civil action with malice and without probable cause, where there has been no arrest of the person or seizure of the property of defendant, and no special injury sustained, which would not necessarily result in all suits prosecuted to recover for like causes of action."

The second Iowa decision referred to was *Smith v. Hintrager*, 67 Iowa 109, 24 N. W. 744, where the court again applied the same rule, saying:

"It is not averred that these plaintiffs suffered in that action any loss, annoyance or inconvenience, except such as may be regarded as incident to every civil action and, such being the fact, it appears to us that the plaintiffs failed to state a cause of action. *Wetmore v. Mellinger*, 64 Iowa 741."

Neither Iowa case, nor any other case cited in *Abbott v. Thorne, supra,* makes any distinction between *special injury* and *injury which is not the necessary result in similar suits.*

An examination of malicious prosecution cases from other states fails to disclose even one case which makes any such distinction, yet many cases are found which cite the rule referring to injury *not the necessary result* of the prior civil suit. Among them are *Ely v. Davis*, 111 N. C. 24, 15 S. E. 878; *Vancouver Book & Stationery Co. v. L. C. Smith & Corona Typewriters* (applying Washington law), 138 F. (2d) 635 (certiorari denied, 321 U. S. 786, 88 L. Ed. 1077, 64 S. Ct. 780); *Soffos v. Eaton*, 39 A. (2d) (D. C.) 865; *Schwartz v. Schwartz*, 366 Ill. 247, 8 N. E. (2d) 668, 112 A. L. R. 325; *Merriman v. Merriman*, 290 Ill. App. 139, 8 N. E. (2d) 64; *Black v. Judelsohn*, 251 App. Div. 559, 296 N. Y. S. 860; *Schierloh v. Kelly*, 253 App. Div. 373, 2 N. Y. S. (2d) 188; *North Point Constr. Co. v. Sagner*, 185 Md. 200, 44 A. (2d) 441; *Adley Express Co. v. Corn Exchange Bank Trust Co.*, 99 F. Supp. 406.

From the foregoing analysis, we conclude that the last half of the rule in *Abbott v. Thorne, supra*, should be understood as if it read: "and no special injury sustained, or, in other words, *no injury which is not the necessary result in such cases.*"

This court in the *Abbott* case, *supra*, also adopted the doctrine of strict limitation on the right to bring suits for malicious prosecution of civil actions, saying, in support of its choice of doctrine:

"Courts are instituted to grant relief to litigants, and are open to all who seek remedies for injuries sustained; and unnecessary restraint, and fear of disastrous results in some succeeding litigation, ought not to hamper the litigant or intimidate him from fully and fearlessly presenting his case."

Any doubt as to this being the established rule in this state is dispelled by our decision in *Manhattan Quality Clothes v. Cable, supra* (decided in 1929), where we applied the doctrine of the *Abbott* case saying:

"Respondents' motion below, upon which the trial court acted, seems to have been based upon the following propositions:

"(1) That no action will lie for the recovery of damages sustained by the institution and prosecution of a civil action with malice and without probable cause, when there was no arrest of the person or seizure of the property of the defendant; . . .

"(1) Upon this subject we have ample authority in our own cases. Judge Dunbar, in the case of *Abbott v. Thorne*, 34 Wash. 692, 76 Pac. 302, 101 Am. St. 1021, 65 L. R. A. 826, ably reviewed the subject and the conflicting decisions from other jurisdictions, and there said:

" 'But, notwithstanding the able opinion in this case, we are forced to the conclusion, from an investigation of authorities and a consideration of the principles involved, that the contrary doctrine is well established, and that an action will not lie for the prosecution of a civil action with malice and without probable cause, when there has been no arrest of the person or attachment of the property of the defendant, and no special injury sustained, or injury which is not the necessary result in such suits. And this doctrine we think is sustained, not only by the overwhelming weight of

numerical authority, but by the overwhelming weight of reason.'

"We have never departed from this doctrine, but on the contrary have uniformly recognized and upheld it in subsequent cases. *Olson v. Haggerty*, 69 Wash. 48, 124 Pac. 145; *Child v. Western Lumber Exchange*, 133 Wash. 49, 233 Pac. 322."

Since we follow the doctrine of strict limitation, the question is: Will an action for malicious prosecution of a civil suit lie when the plaintiff in the prior suit has not resorted to some provisional or extraordinary remedy or ancillary process which inflicted damage which was not the necessary result of all such suits?

A study of all of the malicious prosecution cases decided by this court discloses that we never have decided the question squarely. The rule cited in the *Abbott* and *Manhattan* cases, *supra*, indicates that the court felt the plaintiff in a malicious prosecution case might be required to prove *unnecessary damage* in order to recover.

Our research indicates that, since this court was established in 1854 as a territorial court, fifty-six malicious prosecution cases have been appealed here. Of these, only four cases, however, have been based upon prior *civil* actions. In all these four cases, the defendants have prevailed.

Two of the four cases (*Abbott v. Thorne, supra,* and *Manhattan Quality Clothes v. Cable, supra*) are cited in appellant's briefs. None of the four are cited by respondent.

In one of the four actions, *Gilmore v. Thwing*, 167 Wash. 457, 9 P. (2d) 775, plaintiff's property interests were disturbed by garnishment of his bank account in the prior civil action. The garnishment was not necessary to the prosecution of the prior suit, of course, since it is an auxiliary remedy in an ancillary proceeding.

The question here raised was not reached in the *Gilmore* case, *supra*, since the court affirmed a judgment for defendant on the ground that none of the elements of damage claimed by plaintiff were recoverable in a malicious prosecution action.

The only other malicious prosecution action based on a

civil suit to reach this court was *Smits v. Hogan,* 35 Wash. 290, 77 Pac. 390, which has no bearing upon our present problem.

In support of his judgment, respondent has cited six cases in which this court has allowed recovery by plaintiffs in actions upon attachment or garnishment bonds. These are *Voss v. Bender,* 32 Wash. 566, 73 Pac. 697; *Wild Rose Orchard Co. v. Critzer,* 79 Wash. 462, 140 Pac. 561; *Mills v. Vollmer-Clearwater Co.,* 126 Wash. 73, 217 Pac. 3; *McAllister v. Hogue,* 133 Wash. 664, 234 Pac. 657; *Taylor v. Wilbur,* 170 Wash. 265, 16 P. (2d) 457; and *Olsen v. National Grocery Co.,* 15 Wn. (2d) 164, 130 P. (2d) 78. Respondent also refers to *McGill v. W. P. Fuller & Co.,* 45 Wash. 615, 88 Pac. 1038, in which plaintiff recovered in a common-law wrongful attachment action. In all seven cases, the interference with property rights in the prior action was accomplished by ancillary process. Thus, the damage in each case was *unnecessary damage,* and the cases are not authority for recovery in a suit in which the damage *was* the necessary result of bringing the action.

An examination of authorities from other jurisdictions discloses a division of opinion on the circumstances under · which a suit for malicious prosecution of a civil action will lie.

A number of states, perhaps a majority, have adopted a so-called liberal rule, under which an action for malicious prosecution will lie even when there is no arrest and no interference with property.

A respectable number of states, however, have adopted a much stricter rule, under which malicious prosecution actions, especially those based on prior civil suits, are greatly limited. As already demonstrated in our discussion of the *Abbott* case, this court since 1904 has followed the stricter rule.

In 54 C. J. S. 964, Malicious Prosecution, § 12, the author states this rule as follows:

"In many states, however, following the rule under the statute of Marlbridge, no action will lie for the institution or prosecution of a civil action maliciously and without

probable cause where there has been no arrest of the person or seizure of the property of defendant and no special injury sustained which would not ordinarily result in all suits prosecuted to recover for like causes, as where there has been no interference by arrest, attachment, replevin, injunction, receivership, or other provisional remedy."

*Manhattan Quality Clothes v. Cable, supra,* is cited as one of the cases applying the stricter rule, and note 60 to the annotation adds:

"The greater weight of authority and the better reasoning have been said to support this view."

*Adley Express Co. v. Corn Exchange Bank Trust Co.,* 99 F. Supp. 406, a 1951 case, gives the rule thus:

"The law is well established in New York that *unless there is interference with the person or property by a provisional remedy such as arrest, injunction or attachment as an incident to the maintenance of an action,* a suit for malicious prosecution will not lie despite the fact that the action was instituted maliciously and without probable cause." (Italics ours.)

In *Ely v. Davis,* 111 N. C. 24, 15 S. E. 878, the court said:

"We may as well say that the law seems to be settled by the weight of authority, although there are some decisions to the contrary, that an action will not lie for malicious prosecution in a civil suit, unless there was an arrest of the person, or seizure of property, as in attachment proceedings at law or their equivalent in equity, or in the proceedings in bankruptcy, or like cases, where there was some special damage resulting from the action, and which would not necessarily result in all cases of the like kind."

A number of other courts adopt a much more liberal view, as, for example, *Turner v. J. Blach & Sons,* 242 Ala. 127, 5 So. (2d) 93, which holds that an action for malicious prosecution may be maintained although no attachment of the person nor seizure of property was had in the action complained of.

In the present case, respondent did not show that he suffered any special injury which was not the necessary result in all similar suits, since an action to foreclose a preferred ship mortgage is an action *in rem* and may not be prosecuted unless the court has jurisdiction of the ship, which can

only be effected by the issuance and service of a writ of monition and attachment commanding the marshal to seize the vessel.

The filing of the libel and the issuance of such process *in rem* against the vessel was not only the usual, but also the sole and exclusive way of proceeding in the foreclosure of a preferred ship mortgage. *Bushey & Sons v. Hedger Transportation Corp.*, 167 F. (2d) 9. In that case, the United States second circuit court of appeals said:

"The proceedings began in a normal way in the district court on February 10, 1945, with a libel for a foreclosure of a preferred ship mortgage and the issuance of process in rem against the vessels. *This is not only usual, but is also the only way of proceeding in the case of these mortgages,* which since 1920 have been brought within the exclusive jurisdiction of admiralty. 46 U. S. C. A. § 951, providing for enforcement 'by suit in rem in admiralty,' with original jurisdiction granted 'to the district courts of the United States exclusively.'" (Italics ours.)

Admiralty Rule 10, in U. S. C. A., Title 28, Rules, p. 90, provides for the issuance of process *in rem* as follows:

"In all cases of seizure, and in other suits and proceedings in rem, the process . . . shall be by a warrant of arrest of the ship, goods, or other thing to be arrested; and the marshal shall thereupon arrest and take the ship, goods, or other thing into his possession for safe custody."

It is, therefore, apparent that the seizure of the ship was not by some ancillary or auxiliary process; on the contrary, the process used by appellant to initiate her libel action was the only process to which she could resort.

Following the strict rule of limitation adopted by this court, we hold that an action will not lie for malicious prosecution of a Federal court action *in rem* against a mortgaged vessel instituted for the purpose of foreclosing a preferred ship mortgage.

Appellant's first assignment of error is well taken. Since respondent suffered no damage which was not the necessary result of all foreclosure suits such as the one appellant instituted in the Federal court, he has established no cause of action, even though (viewing the evidence in the light

most favorable to him) we assume that he has proven that appellant acted with malice and without probable cause. The trial court, therefore, erred in refusing to grant appellant's motion for judgment n.o.v.

Being convinced that this is the correct disposition of the case, it is unnecessary to discuss appellant's remaining assignments of error.

The judgment is reversed, and the case remanded with instructions to grant appellant's motion for judgment n.o.v. and to dismiss the action.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and FINLEY, JJ., concur.

June 14, 1954. Petition for rehearing denied.