[No. 1813–3.   Division Three.   July 13, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. CRAIG
LUDWIG, *Appellant.*

*Rodney M. Reinbold* and *Peter Kram,* for appellant.

*Jeremiah M. McCormick, Prosecuting Attorney,* and *James J. Stanton, Deputy,* for respondent.

MUNSON, C.J.—The defendant, Craig Ludwig, appeals from a judgment based upon a jury verdict finding him guilty of assault in the second degree, with a special verdict that he was armed with a deadly weapon. Of the defendant's eight assignments of error, the primary one relates to

the trial court's refusal to exclude evidence of the defendant's prior conviction. We decline the invitation to speculate on possible Supreme Court resolution of that issue and affirm.

The defendant had known Georgia Upton for only several days when she picked him up hitchhiking along a public highway. She related to him that she had left her husband and was going to seek a divorce. A lengthy conversation ensued while they drove into town and then went into a restaurant for a cup of coffee. Mrs. Upton told the defendant that she had encountered difficulty with her husband several months earlier, which evolved from disciplinary action upon her daughter. Apparently the daughter had run away from home, and when Mrs. Upton attempted to discipline her, her husband interfered. There was a considerable ruckus in which Mr. Upton became angry and violent; after the police were called, he threatened to shoot the police if she did not go outside and prevent them from entering the home. While she was awaiting their arrival, Mr. Upton shot two bullets through the door. She also related to the defendant other incidents of physical abuse and use of extreme obscene language.

While they were sitting in the restaurant, she asked the defendant to look outside to see if her car was still there. It was not. She related to him an earlier episode with her husband when it was necessary she take the car away from him because he had refused to give it to her. It now appeared that he had taken the car. She had purchased this auto a year before their marriage and was still making payments thereon. Upon learning of the auto's disappearance, she became very upset and began to contemplate means by which she could recover possession of the automobile.

The defendant left to borrow a friend's pickup, anticipating that he would take Mrs. Upton to recover the car. While he was gone, Mr. Upton called Mrs. Upton at the restaurant and threatened to destroy her car.

The defendant returned and Mrs. Upton, who was very upset, related the telephone conversation to him; they then

proceeded to Mr. Upton's home to recover the car. En route, they stopped at Mrs. Upton's present home to check on her children; while there, they picked up Mrs. Upton's rifle and put it in the pickup.

When they arrived at Mr. Upton's home, Mrs. Upton's car was parked next to the house, adjacent to Mr. Upton's bedroom. She got in the car and attempted to start it, but apparently the rotor from the distributor had been removed. Mr. Upton heard the commotion, came outside and attempted to stop her. At that time, the defendant from some distance away shouted at Mr. Upton to get away from Mrs. Upton. Mr. Upton backed away from the car and started back toward the house where his son Jerry, who had been asleep in the living room, got up and looked out the door. Mr. Upton ordered Jerry to get a rifle standing near the front door. Jerry picked up the rifle and sighted through the scope in the vicinity of the defendant, whereupon the defendant fired. Mr. Upton, who was near the door, took the rifle from his son; the defendant fired a second shot, which took off the tip of Mr. Upton's finger. The son, who had turned back toward the living room, was struck in the chest by the third shot and seriously wounded. In response to the charge of first–degree assault against Jerry Upton, the defendant asserted self–defense. The jury returned a verdict of second–degree assault, and defendant appeals.

As the trial began, the defendant sought a motion in limine to prohibit the State from questioning him about a prior conviction. Apparently on the first day of trial, the prosecuting attorney had received from the clerk of the Superior Court of Los Angeles County an information dated December 1973 charging the defendant with three crimes alleged to have occurred on or about October 24, 1972: (a) murder, apparently second degree, of Furman Leroy Smith, with a 12–gauge shotgun; (b) assault with a deadly weapon with intent to commit murder upon Furman Leroy Smith; and (c) assault with a deadly weapon upon Furman Leroy Smith, to wit, a 12–gauge shotgun.

Accompanying the information was a certified copy of a multipurpose form which indicated that the defendant was represented at a hearing on *May 15, 1974,* by a public defender and that: (a) the nature of the proceedings was a 1538.5 trial in which it was stipulated the hearing would be closed session; (b) "defendant personally and all counsel waiv[ed a] trial by jury;" (c) the defendant withdrew his plea of not guilty to counts 1 (murder) and 3 (assault with a deadly weapon), was rearraigned and pleaded guilty to counts 1 and 3; (d) the defendant waived "probation referral"; and (e) he personally agreed that he waived the "right to be sentenced on 8–22–74 for an additional period of one month" and that he should receive credit for any time served.

The last document (another certified copy of a multipurpose form, but without a designation as to what it purports to be) indicates that the defendant again appeared before the same judge, represented by a public defender 1 year later, *May 14, 1975,* and (a) that counts 1 and 2 were dismissed; (b) that the defendant received 5 years' probation, conditioned upon 1 year in the county jail with credit for time served, and (c) that he "shall, within 30 days of release from Co. [the County] Jail, may leave the state, not return, and to advise P.O. [the parole office] of Washington address. If deft. returns to state, to advise this Court within 5 days, and probation shall then become formal."

This shooting occurred in the late evening of October 17 or early morning of October 18, 1975, in Okanogan County. The court took defendant's motion under advisement, in part because of the difficulty of understanding the certified copies of disposition of the California case. Later during the trial and after the matter had been discussed outside the presence of the jury, the judge denied the defendant's motion. The record implies that the court would have allowed the State to inquire as to a prior conviction of assault with a deadly weapon and possibly as to a prior conviction of second–degree murder. After spending considerable time in deciphering the form, we conclude that it

*might* have been prejudicial error to have allowed inquiry of the murder second or assault with intent to kill because those counts were apparently dismissed.[1]

The defendant contends that RCW 10.52.030 is unconstitutional because it violates the tenth amendment to the Washington State Constitution, which grants the defendant the right to testify in his own behalf, and the due process provision of the fourteenth amendment to the United States Constitution.[2] Because the court was going to admit at least one prior conviction, a crime of violence, the defendant was compelled to refuse to testify.

RCW 10.52.030 states:

> Every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record thereof, or a copy of such record duly authenticated by the legal custodian thereof, or by other competent evidence, or by his cross–examination, upon which he`shall answer any proper question relevant to that inquiry, and the party cross–examining shall not be concluded by his answer thereto.

In addressing the contention that this statute imposes an unreasonable burden upon the defendant's right to testify,

---

[1]The court can allow cross–examination as to a defendant's plea of guilty to an unrelated crime for which no sentence was imposed. *State v. Tate,* 2 Wn. App. 241, 469 P.2d 999 (1970); *cf. State v. Johnson,* 12 Wn. App. 548, 530 P.2d 662 (1975). Here, probation apparently had been granted on one count and the other two counts were dismissed in 1975. All three of the California counts relate to the same date and the same victim. We are unable to discern how one can be guilty of both assault with a deadly weapon and murder; the assault should have merged with the murder. We understand that, at least in Washington, a defendant can be charged with second–degree murder arising out of assault, *State v. Thompson,* 88 Wn.2d 13, 558 P.2d 202 (1977), but we do not believe that the defendant could have been convicted of all three crimes arising from one occurrence. *State v. Bresolin,* 13 Wn. App. 386, 534 P.2d 1394 (1975), *but see State v. Strozier,* 32 Ohio St. 2d 62, 290 N.E.2d 177 (1972) and *People v. Tideman,* 57 Cal. 2d 574, 370 P.2d 1007, 21 Cal. Rptr. 207 (1972).

[2]The defendant's reference to case law interpreting RCW 5.60.040 (the statute governing admission of a witness' prior criminal conviction in a civil case) is inappropriate as an aid in interpreting RCW 10.52.030.

this court has held that prior convictions are admissible until the Washington Supreme Court overrules the long line of decisions upholding this statute. *State v. Liles,* 11 Wn. App. 166, 168, 521 P.2d 973 (1974). Our position has not changed on this issue.

In view of *State v. Hultenschmidt,* 87 Wn.2d 212, 216, 550 P.2d 1155 (1976), it is evident that the Supreme Court may be contemplating reconsideration of its prior interpretations of RCW 10.52.030. Acknowledging that the matter has been the subject of much discussion, we decline to prognosticate the future interpretations of our Supreme Court in relation to that statute. *Cf. State v. Ballinger,* 110 Ariz. 422, 520 P.2d 294 (1974); *People v. Rollo,* 60 Cal. App. 3d 362, 131 Cal. Rptr. 587 (1976); *State v. Santiago,* 53 Hawaii 254, 492 P.2d 657 (1971); *People v. Hill,* 34 Ill. App. 3d 193, 339 N.E.2d 405 (1975); *Fletcher v. State,* 340 N.E.2d 771 (Ind. 1976); *People v. Penn,* 71 Mich. App. 517, 248 N.W.2d 602 (1976); *People v. Godin,* 50 App. Div. 2d 839, 377 N.Y.S.2d 427 (1975); *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974); *Reinsch v. Quines,* 274 Ore. 97, 546 P.2d 135 (1976); *Marshall v. Martinson,* 268 Ore. 46, 518 P.2d 1312 (1974); *State v. McGee,* 230 S.E.2d 832 (W. Va. 1976).

It should be noted that both parties in this action consider that because of the use of the term "may" in RCW 10.52.030, the admissibility of prior convictions is within the court's discretion; it is not mandatory that prior convictions be admitted. The present status of the law is that prior convictions are admissible, and we adhere to that interpretation.

Although the defendant assigns constitutional error and contends the potential admission of his prior conviction precluded him from testifying, an examination of the record leads us to conclude that the defendant chose not to testify for another reason. Mrs. Upton's testimony was highly supportive of the defendant's position and embraced all subjects, except the defendant's subjective intention, to which he could have testified. Defendant's actions of shooting two

people, which removed the fingertip of one and hit the other in the chest, are difficult objective facts to overcome, particularly when neither of the victims fired a shot. We are inclined to believe the prior conviction assignment of error supplies an excuse, rather than a justification, for the defendant's decision not to testify.

Immediately after his arrest, the defendant gave two recorded statements. At a CrR 3.5 hearing it became evident that the first statement was missing. A deputy sheriff testified that the first statement merely recited that the defendant had no knowledge of the shooting, whereas in the second statement, he recounted the events that took place on the evening of the assault. The defendant contends that, inasmuch as he was unable to obtain possession of the first statement, the second statement should have been inadmissible, *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1973); *State v. Wright,* 87 Wn.2d 783, 792, 557 P.2d 1 (1976); *Seattle v. Fettig,* 10 Wn. App. 773, 519 P.2d 1002 (1974); *State v. Temple,* 5 Wn. App. 1, 485 P.2d 93 (1971). It is apparent that the missing tape statement was inadvertently lost or erased. The defendant chose not to testify at a hearing held pursuant to CrR 3.5, as to the content of that statement, nor did he challenge the deputy sheriff's recitation that it was a denial of any knowledge of the occurrence.

The prosecutor has a duty to disclose evidence favorable to the defendant. *State v. Wright, supra.* One requirement of that rule is that the evidence must be material. Here, the defendant had the same knowledge of the content of that statement as the sheriff; he does not contend that it is material. We fail to see how this tape could have been material to the defendant's case. The reasoning of *State v. Wright, supra,* and *Brady v. Maryland, supra,* is not applicable in this situation. By the very nature of the alleged evidence, it is different from the video tape which was lost in *Seattle v. Fettig, supra.* The defendant's suggestions of the manner in which such evidence could have been utilized if the defendant had taken the stand are

speculative at best. We do not condone the loss of such evidence and recognize that the State must bear the consequences; however, we cannot find prejudicial error in this instance.

Defendant next contends that the court erred in sustaining the State's objections to portions of the defendant's opening argument. We are inclined to believe that the court was overprotective of the jury when it restrained the defendant from advising the jury that he intended to prove his reason for appearing at Mr. Upton's house, his reason for taking a weapon, and the information Mrs. Upton had previously related to him. As later testimony indicated, evidence was admitted supporting a majority of the comments to which objections were sustained. We agree with the defendant that his first opportunity to acquaint the jury with the nature of his defense is very important. On the other hand, the court admitted evidence relating to most of the remarks excluded on opening statement and the evidence was available to them during deliberation. We have every reason to believe that defense counsel was extremely competent in relaying that information, not only in his examination of the witness, but in his closing arguments. While we believe the trial court was in error, we do not find that the error was prejudicial. *Wild Rose Orchard Co. v. Critzer,* 79 Wash. 462, 140 P. 561 (1914); *McKenzie v. Oregon Improvement Co.,* 5 Wash. 409, 31 P. 748 (1892).

Defendant next contends that the court erred in allowing the victim, Jerry Upton, to give his opinion as to the direction taken by the defendant's first shot. We disagree. Technically, it may have been an error in that Jerry Upton testified he did not know where the first bullet went; but we find no prejudicial error.

Lastly, the defendant contends the court erred in limiting the following: (a) cross–examination of Jerry Upton as to the means by which he obtained the use of Mrs. Upton's car; (b) cross–examination of Jerry Upton of how other bullet holes previously occurred in the front of the Upton house; (c) cross–examination of a deputy sheriff whether

there existed two bullet holes in the front of the Upton house before the evening of October 24, 1972; and (d) direct examination of a deputy sheriff in an effort to support Georgia Upton's testimony of Mr. Upton's prior violent actions. We find these limitations do not constitute prejudicial error.

■ Even assuming that the defendant properly contends that Lawrence and Jerry Upton wrongfully took Mrs. Upton's car from the restaurant and Jerry then took it to a football game, such allegation adds nothing to the defendant's plea of self–defense.

Mrs. Upton's testimony provided a sufficient account of the circumstances under which the other bullet holes were made. This testimony was undisputed. Testimony by Jerry Upton and the deputy sheriff on the same subject would have been cumulative. We find that the court did not abuse its discretion in prohibiting such testimony. *State v. Hayes,* 73 Wn.2d 568, 439 P.2d 978 (1968).

Likewise, Mrs. Upton's testimony adequately covered the issue of Mr. Upton's prior acts of violence. Furthermore, the defendant became aware of Mr. Upton's propensity toward violence only through Mrs. Upton's accountings to him. Thus, the defendant's fear of similar violence occurring the evening he accompanied Mrs. Upton was derived from her prior statements to him. Since the deputy sheriff could not have spoken with the defendant prior to the shooting incident October 17, his testimony of Mr. Upton's prior acts would have merely been cumulative and within the court's discretion. We find no error.

We affirm.

GREEN and McINTURFF, JJ., concur.

Petition for rehearing denied August 12, 1977.

Review denied by Supreme Court February 3, 1978.